**Sidell T. PIRUS, Plaintiff–Appellee,**

v.

**Otis R. BOWEN, Secretary of HHS, Defendant–Appellant.**

**No. 88–5609.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1988.

Decided March 9, 1989.

Mary Beth McNamara, Office of General Counsel, Dept. of Health and Human Services, Baltimore, Md., for defendant-appellant.

Gill Deford, Nat. Sr. Citizens Law Center, Los Angeles, Cal., for plaintiff-appellee.

Before ALARCON, FERGUSON and NORRIS, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

Appellant Sidell Pirus brought a class action against the Secretary of the Department of Health and Human Services, challenging the Secretary's decision to deny social security benefits to her and the class she represented. After the district court granted Pirus' motion for summary judgment, Pirus petitioned the court for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (Supp. III 1985). The district court granted Pirus' petition, holding that the Secretary's original decision to deny benefits to the class and then to defend that position through

litigation was not "substantially justified" within the meaning of the EAJA. The court also determined that "special factors" justified awarding fees in excess of the $75 per hour cap mandated by the Act. The government challenges both the award of attorney's fees and the fee enhancement. We affirm the district court with respect to both issues.

## I

At age 63, after many years of marriage, Sidell Pirus was divorced from a wage earner covered by the Social Security Act. Four years later she remarried. Soon afterwards, her former spouse died, and Pirus applied for benefits as the divorced wife of a deceased wage earner.[1] Although the divorced spouses of deceased wage earners cannot normally receive these benefits after they remarry, 42 U.S. C. § 402(e)(1)(A), those divorced spouses who remarry *after age 60* are excepted from this general rule pursuant to 42 U.S. C. § 402(e)(3)(A), as amended by Congress in 1983.[2] It was under this exception that Pirus applied. The Secretary, however, denied her claim; under the Department's regulations interpreting the amended section, a divorced spouse was not entitled to benefits if she remarried after age 60 *but before the covered spouse died.* 20 C.F.R. 404.336(e)(4).[3] After seeking administrative relief, Pirus filed suit on behalf of herself and a class of similarly situated individuals, challenging the Secretary's decision to deny benefits to spouses whose remarriages predated their former spouses' deaths.

During the litigation the Secretary took the position that when Congress amended § 402(e)(3)(A) to cover divorced spouses as well as widows who remarried, Congress did not intend to give benefits to those individuals who, like Pirus, remarried before the death of the covered wage earner. The Secretary sought support for this position in the language and legislative history of the 1983 amendment to the Act. The Secretary also took the position that Pirus' class action suit was barred on *res judicata* grounds. The Secretary contended that because a similar class action, *Bowen v. Owens,* 476 U.S. 340, 106 S.Ct. 1881, 90 L.Ed.2d 316 (1986), had been brought by surviving divorced spouses who remarried after age 60, challenging the Secretary's earlier decision to deny them benefits during the period prior to the 1983 amendment, the specific claims at issue in this case could have been raised in *Owens.* Since those claims were not raised, the Secretary argued, Pirus' class was estopped from bringing them in a separate suit. The district court rejected both these arguments and granted summary judgment to the class. The district court also granted Pirus' petition for attorney's fees under the EAJA, awarding fees above the statutory cap of $75 per hour. The district court's award of these fees is the only issue before us on this appeal.[4]

## II

Section 2412(d) of the EAJA provides: "(1)(A) Except as otherwise provided by statute, a court shall award to a prevailing party other than the United States

---

1. Under the Social Security Act, divorced spouses and widows may both apply for "widow's insurance benefits" upon the death of the former spouse. 42 U.S.C. § 402(e)(1).

2. Prior to 1983, widows, but not divorced spouses, who remarried after age 60 could receive benefits. In 1983 Congress amended the section to include surviving divorced spouses. As amended, § 402(e)(3)(A) provides in pertinent part:

   if ... a widow or surviving divorced spouse marries after attaining age 60.... such marriage shall be deemed not to have occurred.

3. The regulation provided as follows:

   You may be entitled to ... benefits as the surviving divorced wife or the surviving divorced husband of a person who was fully insured when he or she died. You are entitled to these benefits if— ... (e)(1) You remarried after you became 60 years old; ... (4) In addition to meeting the requirements of paragraph (e)(1) ... of this section, you remarried after the insured person died.

4. The Secretary does not appeal the district court's award of summary judgment to the plaintiff class nor the permanent injunction issued by the court prohibiting the agency from denying benefits to the class.

fees and other expenses ..., incurred by that party in any civil action ... brought by or against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

To determine whether the Secretary's position was substantially justified within the meaning of the Act, the district court applied a reasonableness standard which has since been approved by the Supreme Court. *Pierce v. Underwood,* — U.S. ——, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).[5] At the outset, the district court determined that the Secretary had not established that it was reasonable to adopt the regulation in the first instance. The court found that the regulation embodied a "forced statutory construction," which could not be reconciled with plaintiffs' facial entitlement under the plain terms of the section. Nor, found the district court, did the regulation make sense in light of the legislative history of the amendment, which revealed a general intent on the part of Congress to extend coverage to elderly claimants and not to penalize them for remarrying. Moreover, the Secretary's failure to provide any economic findings to support his decision to exclude the plaintiff class further indicated to the district court that the Secretary's decision to enact the regulation lacked a reasonable basis.

Turning to the government's litigation position, the district court found it to be equally untenable. Because neither the language of the statute nor the legislative history supported the Secretary's decision to exclude the plaintiff class from § 402(e)(3)(A)'s exception, there was no reasonable ground on which to defend the regulation when Pirus challenged it. Further, the district court found the government's *res judicata* argument completely implausible because the plaintiff class could not have had a full and fair opportunity to litigate its claim in *Owens* since the disputed regulation was not even *in existence* when the *Owens* case was decided by the Supreme Court.

### III

The Supreme Court in *Underwood* held that an appellate court may review a district court's decision that the government's position was not substantially justified only under an abuse-of-discretion standard. Even when the district court's decision on the question of substantial justification "involve[s] a judgment ultimately based upon evaluation of the purely legal issue governing the litigation"—as is the case here—the deferential abuse-of-discretion standard must be applied. 108 S.Ct. at 2547.

The Secretary advances several arguments to support the position he took in adopting the regulation and defending it in the district court. The Secretary argues that the language of § 402(e)(3)(A) is ambiguous, particularly when read together with other portions of the act. Specifically, when the amendment is compared to § 416(d)(2) of the Act, which defines "surviving divorced wife" as a woman divorced from an individual who had *died,* the regulation appears to be a reasonable, if not a required, interpretation of the section. The Secretary also seeks support for his interpretation in the legislative history of the amendment. Portions of the House and Senate reports on the amendment, the Secretary argues, indicate that Congress' primary concern in enacting the amendment was to protect elderly Social Security recipients from the hardship of having their benefits terminated *after they had come to depend upon them.* Since members of the Pirus class had never received any benefits prior to remarrying—they could not receive benefits until the wage earner died—they were not subject to the hardship of disentitlement that Congress intended to remedy. Finally, the Secretary argues that the

---

**5.** The Supreme Court in *Underwood* directed lower courts to ask whether the government's position was "justified to a degree that could satisfy a reasonable person." 108 S.Ct. at 2550. This standard, the Court noted, was no different from the "reasonable basis both in law and fact" formulation previously used by this circuit. *Id.* The district court in the instant case applied this circuit's reasonable basis test, which *Underwood* approved.

district court should have given more weight to the fact that the government conduct in question here involved the interpretation of a new statute; the government should not be penalized, through the imposition of attorney's fees, for advancing a plausible interpretation of a new statute.

Were we deciding whether the government's position was "substantially justified," we might be inclined to reach a different result from that reached by the district court. *Underwood,* however, forecloses us from exercising independent judgment on the reasonableness of the government's position. We may not substitute our view of what constitutes substantial justification for that of the district court; our review is limited to assuring that the district court's determination has a basis in reason.

■ In finding that the Secretary's position lacked substantial justification, the district court focused on several weaknesses in the Secretary's reasoning. First, the district court noted that on its face § 402(e)(3)(A) does not require that the marriage take place before the covered wage earner dies. Had Congress intended to exclude the Pirus class, the court reasoned, Congress most probably would have included language to that effect, especially since the general purpose of the statute was to increase benefits to elderly persons. The only real support that the Secretary advanced for his position to the contrary was the legislative history of the amendment, which the district court correctly concluded was ambiguous. While several persons who testified before Congress in support of the amendment did talk about the special hardship for the elderly of having benefits taken away, that isolated testimony reveals little about the general legislative intent behind passage of the amendment. Moreover, other portions of the legislative history indicate that Congress

passed the amendment to remove any disincentive that elderly people faced when considering remarriage. Since the disincentive existed whether or not the wage-earner was still alive—the divorced spouse could decide not to remarry for fear of not receiving benefits when the former spouse ultimately died—the purpose behind the amendment was served even if the marriage took place before the wage-earner died. Consequently, the district court rejected the Secretary's argument that the legislative history supported his interpretation of the amendment.

Based on these findings, the district court concluded that the Secretary's position lacked substantial justification. Given the highly deferential standard of review mandated by *Underwood,* we cannot say that it was an abuse of discretion for the district court to have concluded that a reasonable person would not have accepted the Secretary's position. Accordingly, we affirm the district court's ruling that the government's position was not substantially justified and that Pirus was therefore entitled to recover attorney's fees under the EAJA.

## IV

■ The final issue before us is whether the amount of the fee award was proper. The EAJA provides that attorney's fees "shall be based upon prevailing market rates for the kind and quality of the services furnished," but "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii) (Supp. III 1985). The district court awarded fees in excess of the $75 per hour statutory cap. Most of the increase was intended to compensate for cost-of-living increases.[6] Part

---

**6.** The Secretary cannot seriously dispute that the district judge may adjust the hourly rate to reflect increases in the cost-of-living since 1981, when the EAJA was enacted. *Animal Lovers Volunteer Assoc. v. Carlucci,* 867 F.2d 1224, 1227 (9th Cir. 1989) (unsigned order); *Ramon-Sepulveda v. INS,* 863 F.2d 1458, 1463–64 (9th Cir.1988).

of the increase, however, was attributable to the presence of several "special factors." First, Pirus' attorneys were expert in the field of social security law. Second, the court found that there were no lawyers in the community willing to undertake this case at the statutory rate. Finally, the court noted that Pirus' lawyers were uniquely situated to handle her case because of their recent experience litigating a similar case, *Bowen v. Owens*, all the way to the Supreme Court.

The Secretary now appeals the district court's decision to award fees in this case above the statutory hourly rate.[7] We review the district court's decision to award fees in excess of the statutory cap for abuse of discretion. 108 S.Ct. at 2553.

In *Underwood*, the Supreme Court considered what Congress meant by a "special factor" that would justify fees at an hourly rate higher than $75. The "special factor" suggested by Congress as an example— "the limited availability of qualified attorneys for the proceedings involved"—received considerable attention. In this regard, the Court concluded that it is not enough to simply say that "lawyers skilled and experienced enough to try the case are in short supply." *Id.* The fact that prevailing hourly rates in a community might dissuade attorneys from taking a case at a $75 hourly rate was not the type of "limited availability" that Congress had in mind, since implicit in the language of § 2412(d) was a Congressional determination that "$75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be." *Id.* 108 S.Ct. at 2554. Congress instead intended for courts to deviate from the statutory cap only if there was limited availability of "attorneys having some distinctive knowledge or specialized skill *needful for the litigation* in question." *Id.* (emphasis added). As examples of the type of lawyers who possess the distinctive knowledge or skill that would justify deviation from the $75 cap, the Court described lawyers who have "an identifiable practice specialty such as patent law," or those who have knowledge of "foreign law or language." *Id.* "Where such qualifications are necessary, and can be obtained only at rates in excess of the $75 cap, reimbursement above the limit is allowed." *Id.*

The Court in *Underwood* thus recognized that lawyers who develop a practice specialty acquire distinctive knowledge and skills which may be necessary to a particular case. Although patent law was the only specialty identified by the Court, there is no reason to believe the Court intended the universe of such specialties to be limited to patent law alone. In the instant case, Pirus' attorneys had developed a practice specialty in social security law. Having litigated various class actions challenging provisions of the Act, they had extensive knowledge of the Act, its legislative history, and the development of the Social Security Administration's regulations. The expertise and skills that they developed are in many ways akin to those developed by a patent lawyer: expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of the needs of a particular class of clients—in this case, the elderly—and of how those needs could best be met under the existing statute and regulations.

■ It is not enough, however, that the attorney possess distinctive knowledge and skills. Those qualifications warrant addi-

---

7. The Secretary also claims that the district judge erred in calculating the number of reimbursable hours. We disagree. The district court reviewed the time justification submitted by Pirus and determined that it did not represent duplicative time considering that the litigation had been "vigorously contested" by the government from the outset. Having experienced the case firsthand, the district court is in the best position to decide whether the attorneys' time was reasonably spent. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1211 (9th Cir.1986), *modified on other grounds,* 808 F.2d 1373 (9th Cir.1987). The Secretary has not given us any reason to believe that the district court erred in approving all of the hours requested.

tional fees only if they are in some way needed in the litigation and cannot be obtained elsewhere at the statutory rate. 108 S.Ct. at 2554; *see also Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1463 (9th Cir.1988) (the legal problem must require some "distinctive knowledge" or "specialized skill" that a legal specialist would possess). In this case the district court ruled that the special expertise of the attorneys was necessary because the litigation involved a highly complex area of the Social Security Act, with which plaintiff's attorneys had already developed familiarity and expertise. The court noted that Pirus' class action was no routine disability case; it required substantial knowledge of the legislative history of the "widow's insurance" provisions of the Act. The court also found, as *Underwood* requires, that these skills could not be obtained at the statutory rate; indeed, the court determined that there were no lawyers in the Los Angeles area besides Pirus' attorneys who possessed the skills necessary to the case who would take the case for $75 an hour.

In sum, while the district court did not have *Underwood* for guidance when it considered Pirus' petition for attorney's fees, its decision to exceed the hourly rate cap was based on the same kind of factors as the *Underwood* court identified—Pirus' attorneys' extensive knowledge of social security law, their unique familiarity with the plaintiff class's entitlement to benefits because of the *Owens* case, and the fact that these necessary qualifications could not be obtained elsewhere except at rates in excess of the $75 cap. We cannot say that these findings were clearly erroneous, nor that it was an abuse of discretion for the district judge, on the basis of these find-

ings, to award fees in excess of the statutory cap.[8]

Since we affirm the district court's decision that Pirus was entitled to attorney's fees under § 2412(d) of the EAJA, we do not consider Pirus' argument that she should have been awarded fees pursuant to section (b) of the Act, under a "common benefit" theory.

The judgment of the district court is AFFIRMED. The case is REMANDED to that court for a determination of the amount of attorney's fees to be awarded Pirus for this appeal.[9]

---

**8.** *Animal Lovers* is not to the contrary. In that case we did not rule out that environmental law may constitute an "identifiable practice specialty" because it requires "distinctive knowledge or specialized skill." 867 F.2d at 1226. We declined to award fees in excess of the statutory cap to the attorney in that case on the sole ground that the appellants were not able to establish that their counsel specialized in environmental work. *Id.* That is certainly not the case here. Pirus' attorneys were all experienced

litigators who had specialized in providing legal services to the elderly and had developed special expertise in social security class actions.

**9.** At oral argument, the Secretary agreed not to contest Pirus' right to attorney's fees on appeal should we affirm the award of fees by the district court.

