**Burton E. EDWARDS, individually and on behalf of a class of persons similarly situated, Plaintiffs,**

v.

**Jerry GRIEPENTROG, in his capacity as Director of the Nevada Department of Human Resources, et al., Defendants.**

**No. CV–N–90–284–ECR.**

United States District Court, D. Nevada.

Dec. 18, 1991.

**524**

Nevada Legal Services, Inc., Carson City, Nev., and Jeanne Finberg, Nat. Senior Citizens Law Center, Los Angeles, Cal., for plaintiffs.

Richard J. Pocker, U.S. Atty., Reno, Nev., for defendant Louis Sullivan, M.D.

Gerald E. Weis, Deputy Atty. Gen., State of Nev., Carson City, Nev., for Griepentrog and Ryan.

---

1. For a complete explanation of these terms, as well as a thorough discussion of all the issues in the underlying case, see the court's order of October 15, 1991 (document # 39), 775 F.Supp. 1383.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

Plaintiffs brought suit under the Medicaid title of the Social Security Act (42 U.S.C. §§ 1396–1396u) against the United States Department of Health and Human Services ("HHS") and the Nevada Department of Human Resources. Plaintiffs allege that Defendants violated the Medicaid statute when they instituted a policy that counted Department of Veterans Affairs (the "VA") unusual medical expense reimbursement payments ("UMEs") as "income" when making the "post-eligibility" phase "share of cost" determination.[1] In its order of October 15, 1991 (document # 39) (the "Order") this court granted all of Plaintiffs' requested relief including their request for summary judgment, declaratory judgment, and permanent injunction. On November 1, 1991 the court ordered the parties to brief the issue of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (see document # 42). The court now rules on the attorneys' fees issue.

## SUBSTANTIAL JUSTIFICATION

Under § 2412(d)(1)(A) of the EAJA, the district court is required to grant costs and attorneys' fees to any successful plaintiff in an action brought against the United States unless the government can demonstrate that its position was "substantially justified." *Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir.1988); *Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir.1987).[2] "Substantially justified" means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person. That is no different from ... the formulation adopted by the Ninth Circuit...." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). Thus, the court looks to Ninth Circuit precedent to decide this issue.

---

2. As a threshold issue the court notes that the government does not dispute that Plaintiffs are "prevailing parties" as required by the statute. The court granted Plaintiffs complete summary judgment and the clerk of the court formally entered the form of judgment in a civil case on October 18, 1991 (document # 41).

■ To determine whether the government's "position" was substantially justified, the standard that the court must apply is one of reasonableness, both in law and in fact. *Andrew*, 837 F.2d at 878. This requires the court to look at two questions: first, whether the government was substantially justified in taking the original underlying action that the plaintiff challenged, and second, whether the government was substantially justified in the posture that it took during the litigation itself in defending the validity of the action. *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988); *Barry*, 825 F.2d at 1331. In other words, "[t]he term 'position' includes [both] the underlying agency action and the legal position of the United States during litigation." *Andrew*, 837 F.2d at 878.

■ The government has the burden of demonstrating that its position was substantially justified. *Kali*, 854 F.2d at 332; *Barry*, 825 F.2d at 1330. If the government has failed to show that *both* the underlying policy that gave rise to the lawsuit *and* its litigation position was substantially justified, Plaintiffs are entitled to attorneys' fees under the EAJA. *Cervantez v. Sullivan*, 739 F.Supp. 517, 521 (E.D.Cal. 1990). *See also Andrew*, 837 F.2d at 880 (EAJA fees awarded on basis of government's failure to show that the challenged policy was substantially justified, so no need to address government's litigation position); *Thompson v. Dep't of Labor*, 885 F.2d 551 (9th Cir.1989) (EAJA fees awarded despite fact that the underlying action was reasonable since government's litigation position was not).

■ Certain issues addressed by the parties are not necessarily dispositive of the issue of substantial justification. First, the fact that the government failed to prevail in the underlying case does not raise a presumption that its position was not substantially justified. *Kali*, 854 F.2d at 332. Second, the mere fact that the court disposed of the case on summary judgment does not mean that the government's arguments were any less justified than they would have been had the case proceeded to trial. "[W]here, as here, the dispute centers upon questions of law rather than fact, summary disposition proves only that the district judge was efficient." *Underwood*, 487 U.S. at 568–69, 108 S.Ct. at 2551–52. *See also Kali*, 854 F.2d at 333 ("[U]nder Fed.R.Civ.P. 56 the district court's finding that summary judgment was appropriate hinged upon the absence of factual disputes, not the clarity of the law."). Third, "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified.... Nevertheless, a string of losses can be indicative, and even more so a string of successes." *Underwood*, 487 U.S. at 569, 108 S.Ct. at 2552.[3] Fourth, arbitrary and capricious conduct (as found by the court in the instant case) is not per se unreasonable. *Andrew*, 837 F.2d at 878. Finally, the EAJA does not suggest that an agency's position is substantially justified because its policy goes years without challenge or change. *Underwood*, 487 U.S. at 579, 108 S.Ct. at 2557.

■ The court first analyzes the position of the Defendants in adopting the underly-

---

**3.** Defendants argue exactly this point. They point to the unpublished order of the District of Maine in *Lamore v. Ives*, Civil No. 90–92, slip op., 1991 WL 193601 (D.Maine 1991) and argue that since the government won there on an issue very similar to the one involved in the present case that their position in this court was substantially justified. Defendants also claim that this court approved of the reasoning in *Lamore* in its October 15 order. Defendants mischaracterize the words of this court. In fact, the court actually wrote: "Although this court agrees with the reasoning expressed in *Lamore*, *it does not concur in the result.*" Order of October 15, 1991 (document # 39) at 19 (emphasis added). Defendants failed to quote the emphasized portion.

What the court concurred with was the *Lamore* court's analysis that a specific provision of 42 U.S.C. § 1396a(a)(17) requires Medicaid to exclude from income during the post-eligibility determination those items that it excludes from income during the eligibility phase. This court, however, disapproved of the *Lamore* court's reading of the statute in that it ruled that the provision only applied to certain groups of beneficiaries none to which the plaintiff in that case belonged. Thus, Defendants' argument that its underlying action in this case was substantially justified because it was in accord with the decision in *Lamore* is without merit. Also, *Lamore* was decided *after* the policy at issue in this case was adopted.

ing policy at issue in this case. "The inquiry into the nature of the underlying government action will by definition concern only the merits of that action." *Kali,* 854 F.2d at 332. Thus, it is necessary here to review the parties' arguments and the court's ruling with respect to the motion for summary judgment.

This court delineated three bases for its decision to grant summary judgment in favor of the Plaintiffs: 1) its reading of the Medicaid statute itself, 2) its analysis of similar cases, and 3) its discussion of the Defendants' view of the term "income" and that view's logical implications. *See* 775 F.Supp. at 1390–93. Based on the above factors the court concluded "that the Secretary and the states within the Ninth Circuit may not consider UME payments to be income for any Medicaid purpose." *Id.* at 1390.

## A. *The Statute*

■ With respect to interpreting the statute itself, the court recognized how arduous a task this was.[4] Defendants correctly point out that "[i]f the statutory scheme is complex, or if the analysis required ... is exceptional, then fees *may* be denied." *Pottgieser v. Kizer,* 906 F.2d 1319, 1324 (9th Cir.1990) (emphasis added) (citations and quotation marks omitted). *See also Edwards v. McMahon,* 834 F.2d 796, 803 (9th Cir.1987) (district court abused its discretion under the EAJA in awarding fees where parties raised difficult questions of statutory interpretation and defendant "argued forcefully and well" for his position). The mere fact that a case involves difficult interpretive issues, however, does not logically require the con-

clusion that the policy based on the statute was substantially justified. Thus, a mere inquiry into the complexity of the statute is of little import. The court must carefully consider whether the Defendants were *reasonable* in formulating their policy.

The issues in the case at bar are very similar to the ones in *Cervantez v. Sullivan,* 739 F.Supp. 517 (E.D.Cal.1990). In *Cervantez,* the plaintiff challenged a regulation promulgated by the Secretary of HHS (the "Secretary") under the Social Security Act. Prior to 1982 the Secretary consistently had included cash or items of value that were *actually available* to an individual to provide for life's basic needs in the definition of "countable income" for social security purposes. However, in 1982, the Secretary expanded the regulation so that it explicitly included garnished income (which is never actually available to the claimant) in the definition of "countable income" for the purposes of determining eligibility for, and the amount of, social security benefits. *Id.* at 522. The plaintiff successfully argued that the Secretary was forbidden from counting as income any money not "actually available" and cited Ninth Circuit precedent, including *Summy v. Schweiker,* 688 F.2d 1233 (9th Cir.1982).[5] In opposing plaintiff's motion for EAJA fees, the defendants in *Cervantez* asserted that the Secretary "was more than reasonable in promulgating the regulation" and attempted to distinguish the cases cited by the plaintiff. They also pointed to allegedly contrary authority. The *Cervantez* court disagreed and ruled that "the Secretary ha[d] utterly failed to explain" why HHS had changed its policy for computing

---

4. The court noted that it "would be hard-pressed to find a more difficult statute to interpret than 42 U.S.C. § 1396a." 775 F.Supp. at 1390–91. The statute reads, in pertinent part:
　(a) Contents
　　A State plan for medical assistance must ...
　(17) ... include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which ... (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of any applicant or

recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the state approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV, or to have paid with respect to him [SSI] benefits under subchapter XVI of this chapter) as would not be disregarded ... in determining his eligibility for such aid, assistance, or benefits. . . .

5. As explained below, this court favorably cited the *Summy* case in its previous Order, 775 F.Supp. at 1389, 1392 & 1393.

income in 1982. *Cervantez,* 739 F.Supp. at 522.

Based on the above discussion, and the conclusion that the complexity of the Medicaid statute itself does not determine the issue of whether the government was substantially justified in this case, the court must now turn to Defendants' other arguments and see if they "explain" why the Secretary adopted the policy to treat unusual medical expenses as income during the Medicaid post-eligibility phase. If the Defendants' explanations are reasonable, then their actions, although declared contrary to law by this court, were substantially justified.

### B. *Defendants' Arguments: The Case Law and Defendants' Definition of the Meaning of "Income"*

First, "[t]he EAJA requires the courts to examine the government's conduct, not the Secretary's beliefs with respect to his policies." *Andrew,* 837 F.2d at 878–79. Thus, the court is unconcerned with whether the Defendants *believed* that they were interpreting the Medicaid statute accurately. The correct inquiry must be whether or not their conduct was objectively reasonable.

#### 1. The cases and the definition of "income"

As the court explained in its previous Order, Medicaid does not define "income" directly but instead refers to the Supplemental Security Income ("SSI") definition. 42 U.S.C. § 1396a(r)(2). Thus, the *Summy* case, which dealt with the question of whether VA UMEs were "income" under the SSI regulations, was directly on point when this court considered Plaintiffs' motion for summary judgment. The Defendants correctly point out that *Summy* could have gone either way:

> The issue before us resembles those familiar examples of Gestalt psychology one encounters in school. Viewed one way the appellee's pension was augmented with funds which when received were as spendable as any other dollar of the pension. Viewed another way the appellee was reimbursed for expenditures pre-

viously made over which there was little control and which could not have been used to meet the basic needs for food, clothing and shelter. *Neither view is "wrong."* Our choice is simply between the interpretation of the Secretary, to which we should accord substantial weight, and that which we believe best advances the purposes of the SSI program.

> The latter is our choice. . . .

*Summy,* 688 F.2d at 1235 (emphasis added) (citation and quotation marks omitted). Defendants seize upon the highlighted language and argue that their decision to treat the ruling in *Summy* as applying only to the eligibility phase must have been substantially justified. The court disagrees.

It is true that the Ninth Circuit wrestled with the UME issue in *Summy* and recognized that logically one could choose either of two views. However, *the court did make a choice,* and that choice became the law. To argue *now* that "neither view is wrong" when the Ninth Circuit declared that one of the two views *was* wrong (in the legal sense) is, as the court previously described some of Defendants' arguments, "sophistic and convoluted." 775 F.Supp. at 1392. The defendant in *Summy* made semantic arguments concerning the definition of the word "income" just as the Defendants did here. The *Summy* court rejected those arguments outright.

Similar arguments were also rejected in *Mitson v. Coler,* 674 F.Supp. 851 (S.D.Fla. 1987), where the court applied *Summy* and ruled that Medicaid agencies could not count UMEs as income during the Medicaid eligibility determination. Commenting on those similar arguments the *Mitson* court stated that it did "not find meaningful the distinction between a reimbursement of medical expenses and an adjustment to income. . . . The Secretary's argument in this case is one of mere semantics." *Mitson,* 674 F.Supp. at 855. *See also Peffers v. Bowman,* 599 F.Supp. 353 (D.Idaho 1984). *Mitson, Summy,* and *Peffers* all recognize the weakness of trying to argue

that a reimbursement (e.g., a UME payment) is "income."

Defendants, however, argued in their opposition to summary judgment that since no court had ever expressly considered UMEs in the "post-eligibility" context that the court should defer to the discretion of the Secretary. This court's previous Order rejected that argument. Perhaps, however, Defendants might now argue that the lack of direct authority concerning Medicaid's post-eligibility phase indicates that, although the Secretary's position in counting UMEs as income during that phase was declared illegal by this court, *at the time* that the Secretary adopted the policy he must have been substantially justified. The court might even accept such an argument if it were not for the fact that the Defendants never offered an explanation at any time during the litigation for *why* they adopted such a policy. Clearly, faced with three decisions that in other contexts all reject the notion that UMEs are "income," it would be a leap of logic for an individual to conclude that UMEs *are* income in a new context. The court might accept that irrational conclusion as "substantially justified," however, if the Defendants had offered *any* sensible explanation for the policy. Instead, the only nonsemantic arguments they made were that the court should defer to the discretion of the Secretary and that the rule favors Medicaid's policy of being a payor of last resort. The court's previous Order noted the problems with these two arguments, and they do not substitute for an explanation of why the policy challenged in this case was reasonable.

2. The Defendants' view and its implications

The court analyzed the Defendants' arguments in its previous Order and considered the implications of their view. The court concluded that:

> [i]f the court adopted the Secretary's definition of income for Medicaid post-eligibility purposes it would perpetuate inconsistent and burdensome treatment of re-

cipients. First, by counting UME payments as income during the post-eligibility phase but not during the eligibility determination, Medicaid gives with one hand but takes with the other. From the point-of-view of the recipient ... *it is as if the UME was never paid.* In fact, it is worse: in the absence of a VA pension, a recipient might be able to charge to the state Medicaid agency the exact same care provided under the UME payment provision. As the court stated in *Mitson*, "[t]he inclusion of Plaintiff's additional [VA pension] payments in income would frustrate and perhaps nullify the effect of the UME provision." 674 F.Supp. at 856.

> .    .    .    .    .

> Under the present system, those who receive VA UME payments are penalized for receiving them, and those who are eligible for but who do not yet receive UME payments are discouraged from applying for them. Ironically, although the Secretary resists the court's conclusion, excluding UME payments from income during the post-eligibility phase would allow pensioners to freely claim such payments from the VA for medical services that might otherwise be charged to Medicaid.

775 F.Supp. at 1392–93. The court also noted that it was inconsistent to treat UMEs as "income" when third-party insurance reimbursements were not so treated. *Id.* at 1393.

Again, the Defendants never explained the reasons for adopting a policy that led to such results. If they had, perhaps those reasons would have convinced the court that the policy was at least "substantially justified." However, the policy was "arbitrary and capricious" in the strictest sense of that phrase, not just in the legal sense. The court finds that the policy had no reasonable basis in law or in fact and, as such, Defendants have failed to meet their burden of showing that it was substantially justified. Thus, the Plaintiffs are entitled to costs and fees pursuant to the EAJA.[6]

---

6. Since the court rules that the underlying agency action was not substantially justified, it does

## AMOUNT OF THE FEES

■ Attorneys' fees under the EAJA are based upon the prevailing market rate for the kind and quality of services furnished but should not be awarded in excess of $75.00 per hour *unless* the court determines that an increase in the cost of living or a *special factor*, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A)(ii). In this case, Plaintiffs argue for a higher market rate, or in the alternative, a cost of living increase.

In considering the "special factor" exception the Supreme Court has said that:

> the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question.... Examples of the [latter] would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

*Underwood*, 487 U.S. at 572, 108 S.Ct. at 2554. The Ninth Circuit expanded the special factor concept in *Underwood* to lawyers who have an expertise in the area of social security law: [7]

> In the instant case, [plaintiff's] attorneys had developed a practice specialty in social security law.... [T]hey had extensive knowledge of the [Social Security] Act, its legislative history, and the development of the ... regulations. The expertise and skills that they developed are in many ways akin to those developed by

a patent lawyer: expertise with a complex statutory scheme; familiarity and credibility with a particular agency; and understanding of the needs of a particular class of clients—in this case, the elderly—and how those needs could best be met under the existing statute and regulations.

*Pirus v. Bowen*, 869 F.2d 536, 541 (9th Cir.1989). The *Pirus* court found that this factor, combined with the lack of qualified attorneys in the plaintiff's area who would be willing to take the case at the statutory rate, warranted an award of fees at a market rate in excess of the $75.00 statutory cap. *Id.* at 541–42.[8]

Both elements are present in the instant case. Plaintiffs' counsel have demonstrated through their declarations that they are skilled at social security litigation and have listed their years of experience in the field. In fact, two of Plaintiffs' counsel were either lead or co-counsel in *Pirus*, 869 F.2d at 537, *Cervantez*, 739 F.Supp. at 518, and *Darling v. Bowen*, 685 F.Supp. 1125 (W.D.Mo.1988), *aff'd*, 878 F.2d 1069 (1989), *cert. denied, Stangler v. Darling*, 494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 783 (1990) (social security case discussed in depth in court's previous Order at 10–11). Nor does the court doubt Plaintiffs' counsel when they declare that qualified attorneys could not be found in Nevada to litigate this case at the statutory rate.[9] Defendants do not contest either of these points.

Defendants do claim, however, that Plaintiffs are inaccurate when they characterize this case as one requiring the special expertise and skill possessed by Plaintiffs' counsel. Essentially Defendants argue that either this was a straightforward case, in which case counsel's time and expertise

---

not need to reach the issue of whether the government's litigating posture also was not substantially justified.

**7.** Medicaid is Title XIX of the Social Security Act. *See* 42 U.S.C. § 1396 et seq.

**8.** Plaintiffs' reliance on this court's order in *Freedle v. Bowen*, 674 F.Supp. 799, 801 (D.Nev. 1987), is misplaced. The "special factor" analysis in that case was based on the so-called "*Kerr*" factors. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,*

425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). The Supreme Court has since disapproved of the use of *Kerr*-type factors in EAJA cases. *See Underwood*, 487 U.S. at 573, 108 S.Ct. at 2554.

**9.** In *Pirus* the court agreed that no qualified attorneys could be found in the entire Los Angeles area other than Pirus' attorneys. 869 F.2d at 542. The court can hardly quarrel with the affidavits of local attorneys and the sworn declarations of Plaintiffs' counsel on this point.

was misspent, or this was an extremely complicated case, in which case no one could fault Defendants in adopting the UME policy (thus it must have been substantially justified). The court already has pointed out the logical fallacy of concluding that Defendants were substantially justified simply because the case centered around a complicated statute. Thus, the Defendants are left with the assertion that counsel's time and expertise were not especially necessary in this case.

The court concludes that this case involved complicated issues and sub-issues which required the expertise of counsel familiar with the intricate maze of the Medicaid and SSI statutes and regulations, as well as VA law concerning the UME payments. In *Cervantez,* a case that the court already has found comparable to the one at bar:

> [r]esolution of the merits of the case turned on an explication of the intent of Congress in enacting the Social Security Act, ... interpretive case law, and the legislative history, as well as extensive knowledge of the history and structure of the Secretary's regulations.... [T]his case likely would not have been brought had plaintiffs' counsel not been experts in the field. Additionally, the case presented several complex jurisdictional issues.... Finally, this case was complicated by the existence of ... cases

upholding a section of the challenged regulation....

739 F.Supp. at 525.

Similarly, in the case at bar, many of the same factors were present: the case involved interpretation of a complex Medicaid statute and related Medicaid and SSI case law; Plaintiffs' counsel have adequately shown that their knowledge of the history and structure of the Secretary's regulations were necessary to effectively litigate the issues in this case; the case probably would not have been brought absent counsel's expertise; there were complicated procedural issues in the case such as class certification of a group of Medicaid beneficiaries, an area in which Plaintiffs' counsel also possesses expertise; and finally, Plaintiffs' had the difficult task of distinguishing adverse law such as the decision of the District of Maine which, in the opinion of this court, was wrongly decided.

■ Based on this court's analysis of these factors coupled with the uncontested declarations of Plaintiffs' counsel, the court finds that Plaintiffs have proved "special factors" that warrant the court to award Plaintiffs attorneys' fees in excess of the $75.00 per hour statutory limit. Plaintiffs' counsel submits the following list of market rates and hours worked for each attorney in the case:[10]

| | | | |
|---|---|---|---|
| McCarthy: | 166.25 hours@$150.00 per hour | = | $24,937.50 |
| Sasser: | 37.20 hours@$150.00 per hour | = | $ 5,580.00 |
| Finberg: | 70.75 hours@$215.00 per hour | = | $15,211.25 |
| Deford: | 34.00 hours@$247.00 per hour | = | $ 8,398.00 |
| | | Total = | **$54,126.75** |

Defendants speculate that the total time spent (308.20 hours) was too much given the fact that the case was decided on summary judgment. The court disagrees and notes that the Defendants provide no specific basis for this conclusion. This is one of the more difficult cases that the court

has faced recently. The Plaintiffs should not be penalized for efficiently disposing of a piece of complex litigation in a short period of time. Additionally, the court has analyzed the detailed bills of the attorneys in this case and concludes that the work performed by them was reasonable and

---

**10.** These fees rightly include the time expended in litigating Plaintiff's entitlement to fees. *See Commissioner, INS v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Cervantez,* 739 F.Supp. at 525–26.

does not appear to be duplicative or wasteful. Finally, the court notes that in each instance the attorneys in this case chose as market rates those rates that their research disclosed as the *lowest* figures within in the range uncovered. The court grants Plaintiffs' motion for attorneys' fees under the EAJA, and due to special factors, will award them market rates in excess of the statutory maximum. The court also will award costs, as required by the EAJA.

IT IS, THEREFORE, HEREBY ORDERED that Plaintiffs' motion for attorneys' fees (document # 44) under the EAJA is GRANTED. The court ORDERS the federal Defendants in this case to pay fees and costs in the following amounts:

| | |
|---|---|
| ATTORNEYS' FEES: | $54,126.75 |
| COSTS: | $ 113.01 |
| **TOTAL AWARD:** | **$54,239.76** |