## BOWEN, SECRETARY OF HEALTH AND HUMAN SERVICES *v.* OWENS ET AL.

No. 84–1905.   Argued February 26, 1986—Decided May 19, 1986

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined.   MAR-

SHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 350. BLACKMUN, J., filed a dissenting opinion, *post*, p. 354.

*Deputy Solicitor General Kuhl* argued the cause for appellant. With her on the briefs were *Solicitor General Fried, Assistant Attorney General Willard, Deputy Solicitor General Geller, Edwin S. Kneedler,* and *William Kanter.*

*Gill Deford* argued the cause for appellees. With him on the brief were *Neal S. Dudovitz, Peter Komlos-Hrobsky, Sally Hart Wilson,* and *Eileen P. Sweeney.*

JUSTICE POWELL delivered the opinion of the Court.

Certain provisions of the Social Security Act in effect between 1979 and 1983 authorized payment of survivor's benefits from a wage earner's account to a widowed spouse who remarried after age 60, but not to a similarly situated divorced widowed spouse. The question in this case is whether those provisions violated the equal protection component of the Due Process Clause of the Fifth Amendment.

## I

The Social Security Act (Act) originally provided only primary benefits to qualified wage earners. Congress later provided secondary benefits to wives, widows, dependent children, and surviving parents of the wage earner. At that time, widows and other secondary beneficiaries would lose their entitlement to survivor's benefits upon a subsequent marriage. In 1950, Congress extended secondary benefits to dependent husbands and widowers, subject to the same restriction. In 1958, Congress created an exception to this remarriage rule so that if a widow or widower married an individual who received benefits under the Act, neither would forfeit survivor's benefits.

Until 1965, divorced wives, including those who had outlived their former spouse (divorced widows), were not eligible for the same benefits provided to wives and widows. In that year, Congress amended § 202(b) of the Act to extend

wife's benefits to a divorced wife and survivor's benefits to a divorced widow if the recipient had been married to her former husband for at least 20 years, and had received more than one-half of her support from him or an agreement or court order required him to make substantial contributions to her support. Pub. L. 89–97, § 308(a), 79 Stat. 375–376.[1] Divorced wives and divorced widows were also subject to the same remarriage rule that had been applied to widows and widowers. In these amendments, however, Congress changed the remarriage rule as it applied to widows and widowers. The new rule provided that if a widow or widower over age 60 married someone who was not entitled to receive certain benefits under the Act, she or he would not completely forfeit survivor's benefits. Instead, the benefits were reduced to half of the primary wage earner's benefits. §§ 333(a)(1) and (b)(1), 79 Stat. 403, 404.

In 1977, Congress again relaxed the remarriage provision for widows and widowers, allowing them to receive unreduced survivor's benefits if they remarried after age 60. The effective date of that amendment was 1979. Pub. L. 95–216, §§ 336(a)(3), (b)(3), (c)(1), 91 Stat. 1547.[2] But Congress retained until 1983 the provision that generally barred a divorced wife or divorced widow from receiving benefits upon remarriage. See §§ 202(b)(1)(C), (b)(3), §§ 202(e)(1)(A), (e)(1)(F). The present case involves this temporary disparity in benefits received upon remarriage.

As a result of a pair of District Court sex discrimination opinions that invalidated portions of the Act, *Ambrose* v. *Califano*, CCH Unempl. Ins. Rep. ¶ 17,702 (Ore. 1980); *Oli-*

---

[1] In 1972, Congress eliminated the requirement that a divorced wife or divorced widow show a specified level of support from her former husband, but retained the 20-years-of-marriage requirement. Pub. L. 92–603, §§ 114(a), (b), 86 Stat. 1348.

[2] Congress also reduced the 20-years-of-marriage requirement for divorced wives and divorced widows to 10 years.

*ver* v. *Califano,* CCH Unempl. Ins. Rep. ¶ 15,244 (ND Cal. 1977), the Secretary of Health and Human Services (Secretary) promulgated regulations providing that divorced husbands and divorced widowers would receive husband's benefits and survivor's benefits to the same extent as divorced wives and divorced widows received wife's benefits and survivor's benefits. 44 Fed. Reg. 34480, 34483–34484 (1979); see 20 CFR §§ 404.331, 404.336 (1985). In 1983 Congress amended the Act to incorporate these regulatory changes. Pub. L. 98–21, § 301(b)(1), 97 Stat. 111. In the same bill, Congress provided that divorced widowed spouses who remarry after age 60 are eligible to receive survivor's benefits in the same manner as widows and widowers.

## II

Appellee Buenta Owens married Russell Judd in 1937 and was divorced from him in 1968. In 1978, when she was 61, she married appellee Kenneth Owens. Judd died on June 19, 1982. On July 30, 1982, Owens applied for widow's benefits on Judd's earnings account as a divorced widow. Her claim was denied on August 27, 1982, because she had remarried. She sought administrative reconsideration, contending that the statutory provision denying benefits because of her remarriage was unconstitutional. Her claim again was denied. Subsequently, Owens and the Secretary entered into an agreement stipulating that the only disputed issue was the constitutionality of the provisions of the Act that at that time denied widow's benefits to divorced widows who remarried. See 42 U. S. C. §§ 402(e)(1)(A), (e)(4). The parties also stipulated that, but for the relevant provisions, Owens' right to the benefits had been established. Based on that agreement, the parties waived any further administrative review. On April 19, 1983, Owens filed this action in the United States District Court for the Central District of California,

and sought to represent a nationwide class of divorced widowed spouses.[3]

On December 23, 1983, the District Court rejected Owens' constitutional challenge. Applying the rational-basis standard of review, the court reasoned that Congress was justified in taking one step at a time in extending benefits to spouses who had remarried. While Owens' motion to alter or amend the judgment under Federal Rule of Civil Procedure 59 was pending, the 1983 amendments to the Act went into effect, so that all otherwise eligible members of the class became entitled to receive monthly survivor's benefits beginning in January 1984. Subsequently, the court certified a nationwide plaintiffs' class, consisting of all divorced widowed spouses who remarried after age 60 and who were denied benefits between December 1978 and January 1984.[4]

---

[3] Appellee Kenneth Owens had been married to Dorothy L. Owens for over 34 years when they were divorced in 1978. In that same year he married Buenta Owens. He was 60 years old. In 1982 he applied for survivor's benefits based on the earnings account of his former wife, who had died. His claim was denied at the initial stage and again in a reconsideration decision in 1983. He and the Secretary also reached an agreement to waive any further administrative review. Kenneth Owens filed suit in the United States District Court for the Central District of California, challenging the constitutionality of the statutory provisions with an argument virtually identical to his wife's. When he filed his lawsuit, the District Court already had ruled in favor of the Secretary in Buenta Owens' suit, and her motion for reconsideration was pending. The court consolidated Kenneth Owens' suit with that of his wife. Kenneth Owens died during the pendency of this suit before this Court. Buenta Owens moved to be substituted for him as an appellee in this case, a motion we granted on February 24, 1985. Because appellees raise identical arguments, the discussion of Kenneth Owens' case is subsumed in the discussion of Buenta Owens' case.

[4] The Secretary disputes the propriety of the class certification and in particular the District Court's conclusion that the waiver of further administrative review as to the named appellees had the effect of waiving exhaustion requirements as to all the members of the class. Because we reject the equal protection claim, we do not reach the class certification issue.

On October 5, 1984, the District Court reversed its prior ruling on the merits and held the challenged provisions unconstitutional. The court agreed with the Secretary that Congress rationally could assume that widowed spouses are generally more dependent on income from the deceased wage earner than are divorced widowed spouses. It reasoned, however, that because Congress in 1977 had chosen to treat surviving divorced spouses and widowed spouses in the same manner upon the death of the wage earner, there was no logical basis for distinguishing between the two classes of individuals upon their subsequent remarriage. The Secretary appealed directly to this Court pursuant to 28 U. S. C. § 1252. We noted probable jurisdiction, *Heckler* v. *Owens*, 474 U. S. 1046 (1985). We now reverse.

### III

Congress faces an unusually difficult task in providing for the distribution of benefits under the Act. The program is a massive one, and requires Congress to make many distinctions among classes of beneficiaries while making allocations from a finite fund. In that context, our review is deferential. "Governmental decisions to spend money to improve the general public welfare in one way and not another are 'not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment.'" *Mathews* v. *De Castro*, 429 U. S. 181, 185 (1976), quoting *Helvering* v. *Davis*, 301 U. S. 619, 640 (1937). As this Court explained in *Flemming* v. *Nestor*, 363 U. S. 603, 611 (1960):

> "Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification."

When the challenged classification in this case is examined in the light of these principles, it cannot be said that the distinctions Congress made were arbitrary or irrational.

## A

We have previously noted that "[t]he entitlement of any secondary beneficiary is predicated on his or her relationship to a contributing wage earner." *Califano* v. *Jobst*, 434 U. S. 47, 52 (1977). In determining who is eligible for such benefits, the scope of the program does not allow for "individualized proof on a case-by-case basis." *Ibid.* Congress "has elected to use simple criteria, such as age and marital status, to determine probable dependency." *Ibid.* In particular, Congress has used marital status as a general guide to dependency on the wage earner: "The idea that marriage changes dependency is expressed throughout the Social Security Act." *Id.*, at 52, n. 8. One example of this assumption is Congress' original decision to terminate the benefits of all secondary beneficiaries, including widowed spouses, who remarried.[5] When Congress subsequently made divorced widowed spouses eligible for survivor's benefits, it also imposed on them the rule that remarriage terminated benefits. This remarriage rule was based on the assumption that remarriage altered the status of dependency on the wage earner. This Court upheld the validity of that general assumption in *Jobst*. *Id.*, at 53.

Congress was not constitutionally obligated to continue to extend benefits to any remarried secondary beneficiary. It nevertheless chose to do so, but in gradual steps. In 1965, Congress provided that if a widow or widower remarried after age 60, she or he would receive reduced benefits. In

---

[5] In 1958, Congress amended this strict remarriage rule to provide that benefits would not be terminated if a widow or widower married a person who was also entitled to benefits under the Act. Pub. L. 85–840, §§ 307(b), (c), 72 Stat. 1031.

1977, Congress provided that if a widow or widower remarried after age 60, she or he would continue to receive full survivor's benefits. Finally, in 1983, Congress amended the Act to provide that divorced widowed spouses who remarry after age 60 may receive survivor's benefits in the same manner as widows and widowers. Appellees complain that Congress' failure in 1977 to extend benefits to divorced widowed spouses who had remarried was irrational.

This Court consistently has recognized that in addressing complex problems a legislature "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson* v. *Lee Optical Co.*, 348 U. S. 483, 489 (1955). That is precisely what Congress has done in this case. When Congress decided to create some exceptions to the remarriage rule, it was not required to take an all-or-nothing approach. Instead, it chose to proceed more cautiously. It had valid reasons for doing so.

The House version of the 1977 bill contained a complete elimination of the general rule terminating benefits upon a subsequent marriage. H. R. Rep. No. 95–702, pt. 1, pp. 47–48 (1977). The House version would have created in the first year of operation alone 670,000 more beneficiaries than under the pre-1977 system,[6] costing $1.3 billion in additional benefits each year. *Ibid.*[7] Faced with these

---

[6] In addition to widowed spouses and divorced widowed spouses, the expanded class of beneficiaries would have included surviving parents and surviving children.

[7] The contemporaneous legislative history does not reveal what portion of that figure would have been attributable to divorced widowed spouses. A budgetary report on the 1983 amendments that eliminated the distinction between widowed spouses and divorced widowed spouses estimated the cost of that amendment as less than $50 million a year. Congress in 1977 was not required to separate out the $1.3 billion cost figure by subcategories. It was free to continue to extend benefits following marriage only to that group of secondary beneficiaries most closely tied to the wage

concerns, Congress reasonably could decide to "concentrate limited funds where the need [was] likely to be greatest." *Califano* v. *Boles,* 443 U. S. 282, 296 (1979). It chose only to create an exception for widows and widowers, who presumably were more likely to depend on their spouses for financial support than were divorced widows and widowers. While it may have been feasible to have extended benefits to divorced widowed spouses in 1979 rather than 1983, Congress was not constitutionally obligated to do so.

Congress' adjustments of this complex system of entitlements necessarily create distinctions among categories of beneficiaries, a result that could be avoided only by making sweeping changes in the Act instead of incremental ones. A constitutional rule that would invalidate Congress' attempts to proceed cautiously in awarding increased benefits might deter Congress from making any increases at all. The Due Process Clause does not impose any such "'constitutional straitjacket.'" *De Castro,* 429 U. S., at 185, quoting *Jefferson* v. *Hackney,* 406 U. S. 535, 546 (1972). As we recognized in *Jobst:*

> "Congress could reasonably take one firm step toward the goal of eliminating the hardship caused by the general marriage rule without accomplishing its entire objective in the same piece of legislation. *Williamson* v. *Lee Optical Co.,* 348 U. S. 483, 489. Even if it might have been wiser to take a larger step, the step Congress did take was in the right direction and had no adverse impact on persons like the Jobsts." 434 U. S., at 57–58.

Congress drew a reasonable line in a process that soon increased benefits to all relevant beneficiaries.

B

The District Court correctly reasoned that under *De Castro* and *Boles,* it was rational for Congress to assume that

---

earner, consistent with the general purposes of the Act. That $50 million annual cost is sufficient to justify fiscal concern.

divorced widowed spouses are generally less dependent upon the resources of their former spouses than are widows and widowers. It held, however, that because Congress had chosen to treat widowed spouses and divorced widowed spouses identically upon the death of the wage earner, there was no rational basis for distinguishing between them if they remarried. The logic of the District Court's position depends on a showing that Congress did not distinguish between divorced widowed spouses and widowed spouses prior to remarriage. Apparently the District Court inferred that because both divorced widowed spouses and widowed spouses were entitled to survivor's benefits, Congress viewed the groups as equally dependent on the wage earner. Such an inference is belied by the history and provisions of the Act.

When Congress first began to make divorced wives eligible for wives' benefits in 1965, it focused on that group of divorced wives whose marriages ended after many years, when they might be "too old to build up a substantial social security earnings record even if [they] can find a job." H. R. Rep. No. 213, 89th Cong., 1st Sess., 107–108 (1965). To that end, divorced wives were eligible for wife's benefits only if they had been married to the wage earner for 20 years and received substantial support from him. It was not until 1972 that Congress dropped the requirement of showing support from the wage earner. Even then, Congress retained the 20-year marriage requirement.

Congress has made the same distinctions in its treatment of divorced widowed spouses. When they first became eligible for survivor's benefits in 1965, it was under the same basic eligibility rules that applied to divorced spouses. During the relevant time of this lawsuit, divorced spouses and divorced widowed spouses had to have been married to the wage earner for at least 10 years to receive benefits. That precondition did not have to be met by spouses or widows.

These eligibility requirements demonstrate that Congress adhered to the general assumption, approved in *De Castro*, that divorce normally reduces dependency on the wage earner. The fact that Congress awards benefits to divorced widowed spouses once the eligibility requirements are met does not necessarily mean that their dependency is equivalent to that of widows or widowers. Congress may view the 10-year-marriage requirement as a lesser showing of dependency, but still sufficient to justify extension of benefits. Presumably Congress concluded that remarriage sufficiently reduced that lesser dependency to the point where it could conclude that benefits no longer were appropriate. These views would be consistent with the position Congress has taken throughout the history of the Act that divorced spouses are less dependent on the wage earner than spouses. Because divorced widowed spouses did not enter into marriage with the same level of dependency on the wage earner's account as widows or widowers, it was rational for Congress to treat these groups differently after remarriage.

## IV

The judgment of the District Court is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

The Court demonstrates an enviable ability to discern rationality where there is none. But the majority's efforts to imagine plausible legislative scenarios cannot obscure the simple truth: there is absolutely no evidence that Congress had any rational basis for deciding in 1977 that surviving divorced spouses who remarried could not receive the same survivor's benefits allowed to remarried widowed spouses. Because I believe that such a distinction between two groups treated similarly in other respects cannot survive the scru-

tiny required by the equal protection component of the Fifth Amendment's Due Process Clause, I dissent.

## I

In 1977, a Report of the House Committee on Ways and Means noted one drawback of the benefits scheme then in force:

> "Present law provides, in general, that the marriage (or remarriage) of a worker's divorced or surviving spouse, parent, or child prevents or terminates entitlement to benefits based on the worker's social security earnings record. For example, a widow who remarries before age 60 cannot get benefits based on her first husband's earnings as long as she is married. If she remarries after age 60, the benefits based on the first husband's social security are reduced or terminated; the widow gets either a wife's benefit based on her first husband's earnings (which is less than the widow's benefit she was getting) or a wife's benefit based on her current husband's earnings (if he is a beneficiary), whichever is higher. Benefits are not payable to divorced spouses and young surviving spouses who are remarried.
>
> "Your committee is especially concerned about the effect of these provisions on older surviving spouses (and divorced spouses). Accordingly, your committee has recommended changes in the law which would eliminate marriage or remarriage as a factor affecting entitlement to benefits or benefit amounts. Specifically, under your committee's bill, marriage or remarriage would not bar or terminate entitlement to benefits as a divorced spouse, surviving spouse . . . , parent, or child, and remarriage would not cause any reduction in aged widow's or widower's insurance benefits." H. R. Rep. No. 95–702, pt. 1, pp. 47–48 (1977).

The Senate version of this bill, however, did not address any of the House Committee's concerns. And a subsequent

Report tersely records the result of discussions between conferees from both Houses on this issue:

> "The Senate recedes, with an amendment that would retain only that part of the House-passed provisions that would prevent reduction in benefits for widows and widowers who remarry after age 60." H. R. Conf. Rep. No. 95–837, p. 73 (1977).

The compromise thus produced the Social Security provisions in effect between 1979 and 1983 that are the subject of this suit. Those provisions authorized payment of survivor's benefits to widowed spouses who remarried after age 60, but not to similarly situated divorced widowed spouses.

## II

As a historical matter, I suspect that the Court is right to characterize the distinction drawn by the 1977 Act between widowed spouses and surviving divorced spouses as the product of Congress' decision to "take one step at a time," *ante*, at 347, toward a program that would reflect "the needs of today's society," H. R. Rep. No. 95–702, pt. 1, *supra*, at 4. However, under the Due Process Clause, even legislative classifications that result from compromise must bear at least a rational relationship to a legitimate governmental purpose. Had Congress accommodated the House's reform goals with the Senate's more conservative outlook in this area by passing a law giving benefits to only those remarried widowed spouses who had been born on odd-numbered days of the calendar, we would surely have to strike the provision down as irrational. The question here is thus whether Congress had any rational basis for taking the particular step that it chose to take in 1977.

Recognizing that it is not enough to label the 1977 provisions a way station on the road to a sensible destination, the Court argues that the statutory distinction between surviving divorced spouses and widowed spouses was based upon a legislative judgment that widowed spouses were the more

dependent of the two groups. The problem with the majority's rationalization is that Congress never expressed it, or even hinted at it. The relevant legislative history contains absolutely no evidence to support the assumption that a divorced survivor is any less dependent than a widowed survivor, or to indicate that in 1977 Congress was at all motivated by that assumption.

The majority attempts to fill the gap by assuming that Congress must have perceived a distinction between divorced spouses and widowed spouses because it required that the former, but not the latter, be married to the wage earner for 10 years in order to receive benefits. That distinction can perhaps be taken as evidence that Congress believed that a divorced spouse who had been married to the wage earner for less than 10 years was not sufficiently dependent on the wage earner's income to justify the extension of benefits. Yet it can hardly be taken as an indication that surviving divorced spouses who *did* satisfy the 10-year requirement were thought any less dependent than widowed spouses. Divorced spouses meeting that requirement were not treated differently from widowed spouses for any purpose other than the remarriage provisions, and there is no indication in the statute or legislative history that Congress ever attempted to articulate a difference between the two groups justifying different treatment.

"When a legislative purpose can be suggested only by the ingenuity of a government lawyer litigating the constitutionality of a statute, a reviewing court may be presented not so much with a legislative policy choice as its absence." *Schweiker* v. *Wilson*, 450 U. S. 221, 244 (1981) (POWELL, J., dissenting); see *United States Railroad Retirement Board* v. *Fritz*, 449 U. S. 166, 184 (1980) (BRENNAN, J., dissenting). While the absence of a clear statement of purposes need not doom a statute under rationality review, our task must always be to determine whether a particular rational purpose *actually* motivated the Legislature. See *Fritz, supra,* at

188 (BRENNAN, J., dissenting). We have no indication in this case that Congress had any basis for drawing this line other than its desire to find a point of compromise between the two Houses. With the help of the Government's lawyers, the Court has tried hard to come up with a hypothetical justification for Congress' action. I do not think that is our job. I dissent.

JUSTICE BLACKMUN, dissenting.

I agree with JUSTICE MARSHALL that the Court has failed to identify a rational basis for Congress' decision to treat widowed spouses and surviving divorced spouses differently upon their remarriage. If anything, persons in these two categories are *more* similarly situated after remarriage than they were before, since they all then belong to family units unconnected to the primary wage earner whose earnings provide the basis for their secondary social security benefits. Cf. *Califano* v. *Jobst*, 434 U. S. 47, 53 (1977) ("marriage is an event which normally marks an important change in economic status" and "not only creates a new family . . . but also modifies . . . pre-existing relationships").