William A. McCANN, et al.,
Plaintiffs–Appellants,

v.

CITY OF CHICAGO, et al.,
Defendants–Appellees.

Nos. 91–3261, 91–3267.

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1992.

Decided July 8, 1992.

Mark L. LeFevour (argued), Callahan, Fitzpatrick, Lakoma & McGlynn, Oak Brook, Ill., John L. Gabbins, Michael L. Blumenthal, Blumenthal & Associates, Chicago, Ill., for plaintiffs-appellants.

Lawrence Rosenthal, Deputy Corp. Counsel, Office of the Corp. Counsel, Mardell Nereim, Kelly R. Welsh, Asst. Corp. Counsel, Benna R. Solomon, Joan Flynn, Asst. Corp. Counsel (argued), Office of the Corp. Counsel, Appeals Div., Chicago, Ill., for defendant-appellee City of Chicago.

Michael G. Cleveland, Vedder, Price, Kaufman & Kammholz, Lawrence Rosenthal, Deputy Corp. Counsel, Office of the Corp. Counsel, Mardell Nereim, Kelly R. Welsh, Asst. Corp. Counsel, Benna R. Solomon, Joan Flynn, Asst. Corp. Counsel, Office of Corp. Counsel, Appeals Div., Chicago, Ill., for defendant-appellee Policeman's Annuity & Ben. Fund of the City of Chicago.

Barbara Smith and Jennifer Naber, Asst. Corp. Counsel, Office of the Corp. Counsel, Kelly R. Welsh, Asst. Corp. Counsel, Joan Flynn, Asst. Corp. Counsel (argued), Office of the Corp. Counsel, Appeals Div., Chicago, Ill., for defendant-appellee Leroy Martin.

Before CUDAHY, EASTERBROOK, and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

For many years, Chicago retired members of its police force at 63. That changed when the Supreme Court held, in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), that the Age Discrimination in Employment Act applies to state law enforcement officials. Chicago's retirement age rose from 63 to 70, and city halls throughout the nation rose in protest. Eventually they procured a change in the law.

In 1986 Congress amended the ADEA to permit state and local governments to restore the mandatory retirement ages that had been in place on March 3, 1983, the day after the Supreme Court handed down *EEOC v. Wyoming:*

> It shall not be unlawful for an employer which is a State [or] a political subdivision of a State ... to discharge any individual because of such individual's age if such action is taken (1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable State or local law on March 3, 1983, and (2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

29 U.S.C. § 623(j). This legislation shows the signs of compromise. Any law enforcement officer covered by a collective-bargaining agreement in effect on June 30, 1986, that specified a higher retirement age could stick around until that age, "the termination of such collective bargaining agreement or January 1, 1990, whichever occurs first." Section 7 of Pub.L. 99–592, 100 Stat. 3344–45 (1986). Section 623(j) faces a sunset in 1993.

Section 623(j) moved the locus of the battle from Washington, D.C., to state and city governments. Illinois enacted a statute permitting cities to restore the rules that were in effect on March 3, 1983. Ill. Rev.Stat. ch. 68 ¶ 2–104(A)(7). In January 1988, after still another political contest, Chicago enacted an ordinance taking advantage of its renewed control over retirement ages. It reinstituted the mandatory retirement age of 63 for all members of the police force. Early in 1986, however, Chicago and the Fraternal Order of Police reached a collective bargaining agreement covering all officers below the rank of sergeant. This agreement barred mandatory retirement before 70. Under the proviso to the 1986 amendment, Chicago could not reduce the retirement age of these officers until January 1, 1990. Thus during 1988 and 1989 only sergeants and higher ranks had to leave at age 63. In this class action the police officers contend that the difference in retirement ages for these two years violates both the ADEA and the equal protection clause of the fourteenth amendment. The district court disagreed and granted summary judgment to the defendants. Plaintiffs have abandoned in this court any argument that the restoration of a retirement age that predated the ADEA is a "subterfuge" for purposes of § 623(j)(2). See *Public Employees Retirement System of Ohio v. Betts*, 492 U.S. 158, 168, 109 S.Ct. 2854, 2861, 106 L.Ed.2d 134 (1989); *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977).

Between 1980 and 1987 the Illinois Human Rights Act, which applies to private and public employers, forbade mandatory

retirement before the age of 70. Ill.Rev. Stat. ch. 68 ¶ 2–102(A). (An amendment in 1987 apparently forbids mandatory retirement at any age.) Plaintiffs submit that the "age of ... retirement in effect under applicable State or local law on March 3, 1983" was accordingly 70. One district judge has agreed. *Jirus v. Berwyn*, 712 F.Supp. 672 (N.D.Ill.1989). Chicago replies that the Human Rights Act does not govern because the Illinois Municipal Code, Ill.Rev.Stat. ch. 24 ¶ 10–1–18(c), authorizes cities to compel law enforcement officials to retire at age 63. Yet *State v. Mikusch*, 138 Ill.2d 242, 149 Ill.Dec. 704, 562 N.E.2d 168 (1990), casts substantial doubt on this approach, for it holds that the Human Rights Act displaces part of the state's Vehicle Code separating state vehicle investigators from office at age 60. Ill.Rev. Stat. ch. 95½ ¶ 2–115. We called for supplemental briefs after argument on the effect of *Mikusch*, which neither party had discussed.

Chicago contends that youth is a bona fide occupational qualification for police, permitting retirement at 63 even if the Human Rights Act applies. If this is so, however, then Chicago could have maintained its retirement system without change after *EEOC v. Wyoming*, for the federal statute also has a BFOQ exception. 29 U.S.C. § 623(f)(1). In both federal and state law, however, this defense "is written narrowly, and [the Supreme] Court has read it narrowly." *United Auto Workers v. Johnson Controls, Inc.*, — U.S. —, 111 S.Ct. 1196, 1204, 113 L.Ed.2d 158 (1991). In its current state, the record does not support summary judgment for the City on this ground. So we must consider Chicago's alternative argument that the language of the Municipal Code, in conjunction with another statute providing that no state law enacted after January 12, 1977, regulates home-rule jurisdictions (of which Chicago is one) unless the state legislature expressly so provides, Ill.Rev.Stat. ch. 1 ¶ 1106, permits the City to disregard ¶ 2–102(A).

■ The Municipal Code does not set 63 as a mandatory age of retirement. Instead it delegates to municipalities the power to set a retirement age, provided they choose 63 or older. The Human Rights Act does not "conflict" with delegation in the same direct way it superseded the retirement age in the Vehicle Code. Does ¶ 2–102(A) undo the delegation of power? It does not address the question. Two considerations lead us to conclude that it does not. First is the rule of construction in ¶ 1106 that only express impingements on home-rule jurisdictions affect cities' powers. The Human Rights Act withdraws home-rule powers concerning housing discrimination, Ill. Rev.Stat. ch. 68 ¶ 7–108(D), but contains nothing comparable concerning age discrimination. Second is the statute Illinois enacted in 1987, Ill.Rev.Stat. ch. 68 ¶ 2–104(A)(7), permitting cities to take advantage of § 623(j). The 1987 legislation would be hollow if the rules in force in 1983 forbade mandatory retirement earlier than 70. Chicago's ordinance restoring the mandatory retirement age of 63 therefore is consistent with the ADEA.

■ Age is neither a suspect classification nor otherwise a basis for requiring states to supply an enhanced justification for their laws. *Gregory v. Ashcroft*, — U.S. —, 111 S.Ct. 2395, 2406–08, 115 L.Ed.2d 410 (1991); *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 441, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313 (1985); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). After *Murgia*, which held that a state may compel police to retire at 50, there can be no doubt that the Constitution permits Chicago to select 63 as a cap. Plaintiffs challenge not the particular age of retirement but treating sergeants (and above) differently from patrol officers.

■ Chicago has a rational basis for the difference. It did what it could to set a low age for everyone, but the proviso to § 623(j) delayed its implementation for officers covered by the collective bargaining agreement. True enough, Chicago could have waited until 1990 to move the retirement age for everyone, but that would

have frustrated achievement of its choice of age 63, a choice the Constitution allows it to make. So the question becomes whether the proviso to § 623(j) is constitutional.

Grandfather clauses—laws that like the proviso curtail the application of new rules to existing entitlements—protect expectation interests, which is enough to make them rational and so defeat challenge under the equal protection clause. *Nordlinger v. Hahn,* —— U.S. ——, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992); *New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Because a collective bargaining agreement is a contract, this particular expectation has the sanction of the contracts clause, Art. I, § 10 cl. 1, behind it. It cannot violate the equal protection clause to recognize entitlements under contract, which by definition differentiate signatories from bystanders. Lieutenants lack the retirement-age benefit of the collective bargaining agreements, but they receive pay higher than officers who walk the beat. We doubt that the captains believe that their salaries violate the equal protection clause! Chicago extended different packages of duties, pay, and fringe benefits to the different classes of police officers. It is no more questionable to have different retirement ages for these groups than to have different medical benefits packages.

Plaintiffs' entire line of argument is foreclosed by *Vance v. Bradley,* a case they did not bother to cite. A district court distinguished *Murgia* by observing that some of the State Department's personnel stationed overseas are in the Foreign Service System (mandatory retirement at 60) while others are in the Civil Service System (mandatory retirement at 70). This difference was unjustified, the court thought. The Supreme Court reversed, holding that the disparate packages of wages and benefits in the two systems needed no special justification. Higher wages may offset earlier retirement. 440 U.S. at 109, 99 S.Ct. at 948–49. The Court added that the foreign service is supposed to be an elite corps, justifying earlier retirement to protect the vigor of the group and create opportunities for advancement. Exactly the same may be said in support of earlier retirement for the more senior officers of a police force. And it matters not that the record contains no evidence on the point. As the Court stressed, under the rational basis fork of equal protection analysis, the question is what a legislature *could have* concluded, and not what a judge believes after taking evidence. 440 U.S. at 110–12, 99 S.Ct. at 949–50. See also, e.g., *Northside Sanitary Landfill, Inc. v. Indianapolis,* 902 F.2d 521 (7th Cir.1990); *Pontarelli Limousine, Inc. v. Chicago,* 929 F.2d 339 (7th Cir.1991).

Instead of understanding the proviso as a way to achieve public benefits, we might see it as a concession to a powerful interest group. Legislation often is possible only if enemies can be assuaged by concessions that have no principle beyond the virtue of necessity. Interest-group influence is no news; Madison's *Federalist No. 10* is all about the power of faction and how a federal government may ameliorate (though not overcome) this bane. If interest-group exceptions to general laws vitiate the entire law there might be fewer exceptions, but more likely there would be fewer statutes, including some in which the special interests won everything rather than settling for partial victories. Cases holding that a legislature may take one step at a time, addressing part of a subject while leaving identical problems outside the law, tolerate interest-group influence in politics. E.g., *Bowen v. Owens,* 476 U.S. 340, 347, 106 S.Ct. 1881, 1886, 90 L.Ed.2d 316 (1986); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). Cf. *Central States Pension Fund v. Lady Baltimore Foods, Inc.,* 960 F.2d 1339, 1342–44 (7th Cir.1992).

Whether the difference in retirement ages is a public-spirited effort to protect expectation interests, an economic tradeoff between salary and benefits, or a sop to an interest group possessing the power to block a larger step, in the end makes no difference. Each of these understandings supplies a rational basis for the proviso to

§ 623(j), which permits Chicago to proceed as it did.

AFFIRMED.