# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3139

_____

|  |  |  |
|---|---|---|
| Minnesota Senior Federation, | * | |
| Metropolitan Region; Mary Sarno, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| United States of America; Tommy G. | * | |
| Thompson,<sup>*</sup> Secretary of Health and | * | |
| Human Services, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  May 17, 2001

Filed:  December 13, 2001

_____

Before LOKEN, ROSS, and FAGG, Circuit Judges.

_____

LOKEN, Circuit Judge.

The "Medicare+Choice" program was enacted as part of the Balanced Budget Act of 1997 and is now codified at 42 U.S.C. §§ 1395w-21 to w-28.  The program includes reimbursement provisions that encourage managed health care organizations

---

<sup>*</sup>Tommy G. Thompson has been appointed to serve as Secretary of Health and Human Services, and is substituted as appellee under Federal Rule of Appellate Procedure 43(c)(2).

to be cost-effective and to pass cost savings on to their members in the form of additional benefits or reduced charges. As under prior law, cost effectiveness is measured by a formula based primarily on "fee-for-service" health care costs in each local community, an approach that results in substantial geographic variations. Though Congress intended to reduce these disparities, the Medicare+Choice formula still produces wide variations in the payments Medicare provides to managed health care providers. Because "excess" payments may be passed on to Medicare beneficiaries, the end result is that Medicare benefits are more generous in some communities than in others.

In this case, the Minnesota Senior Federation and Mary Sarno, a Florida resident who would like to live with her daughter in Minnesota, seek a declaratory judgment that the Medicare+Choice formula violates their constitutional rights to travel and to equal protection of the law. The district court[1] granted defendants' motion to dismiss for failure to state a claim upon which relief may be granted. Minnesota v. United States, 102 F. Supp. 2d 1115 (D. Minn. 2000).[2] The Federation and Sarno appeal. Reviewing the dismissal de novo, and taking all facts alleged in the complaint as true, see Knapp v. Hanson, 183 F.3d 786, 788 (8th Cir. 1999) (standard of review), we affirm.

## I. Background

Medicare was established in 1965 and presently serves some thirty-nine million elderly and disabled Americans. Uniform benefits were initially provided under

---

[1]The HONORABLE DONALD D. ALSOP, United States District Judge for the District of Minnesota.

[2]The district court also dismissed the State of Minnesota's claim that the Medicare+Choice formula violates its rights under the Tenth Amendment. See 102 F. Supp. 2d at 1119-23. The State did not appeal that ruling.

Medicare Part A and Medicare Part B, and these programs continue today.  See 42 U.S.C. §§ 1395c–1395i-5; 1395j–1395w-4.  For beneficiaries who enroll in Parts A and B and elect to obtain benefits on a "fee-for-service" basis, Medicare payments are made for each service rendered.  Amounts Medicare pays to providers vary in part because of geographic differences in the fees charged for providing those services.

In 1972, Congress enacted Medicare Part C, a program that permits managed health care organizations to enter into "risk contracts" under which the organization provides a full range of Medicare services and receives a single monthly capitation payment for each enrollee.  See 42 U.S.C. § 1395mm; 42 C.F.R. § 417.594.  Capitation payments are determined by a formula that is based upon the projected cost of treating beneficiaries under the traditional fee-for-service system.  Thus, the formula incorporates wide geographic variations in health care costs.  But under Medicare Part C, the variations can result in different benefits to Medicare beneficiaries because, when a managed care organization receives more in capitation payments from Medicare than it costs to provide Medicare services to its enrollees (an "excess" that is determined by a complex formula), it may pass this cost saving on to enrollees in the form of reduced premiums, reduced co-payments, or additional health care benefits.  See 42 U.S.C. § 1395mm(g)(2); 42 C.F.R. § 417.592.

Medicare+Choice, which is the new Medicare Part C, was enacted in 1997 to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare. . . . [and] enable the Medicare program to utilize innovations that have helped the private market contain costs and expand heath care delivery options."  H.R. Conf. Rep. No. 105-217, at 585 (1997), reprinted in 1997 U.S.C.C.A.N. 176, 205-06.  Medicare+Choice includes a modified capitation payment formula intended to reduce the prior geographic payment variations.  But the government concedes that substantial discrepancies remain.  For example, Mary Sarno is a Medicare Part C enrollee who lives in Broward County, Florida.  In 1999, the managed care reimbursement rate for Broward County, Florida,

was $676.64. Sarno's daughter lives in Minnesota. In 1999, the managed care reimbursement rate for Dakota County, Minnesota, was $394.92. The generous reimbursement rate in Broward County enabled Sarno's plan to offer unlimited prescription drugs, no co-payments for physician visits and various services, and no annual premium. By contrast, Medicare Part C enrollees in Dakota County paid an annual premium of $1,137, were charged higher co-payments, and received virtually no prescription drug coverage. Such disparities are the basis for appellants' claims that the Medicare+Choice formula violates their travel and equal protection rights.

## II. Discussion

The Federation and Sarno attack the discriminatory impact of the Medicare+Choice formula because it results, for example, in Medicare beneficiaries in southern Florida receiving more benefits at less cost than their similarly situated counterparts in Minnesota. Appellants mount two constitutional challenges to this federal statutory regime. First, they argue that because the formula implicates the constitutional right to travel, it is subject to strict scrutiny and fails that standard of review because it is not narrowly tailored to meet a compelling government interest. Second, they argue in the alternative that the formula does not withstand even deferential rational basis review and therefore violates their right to equal protection guaranteed by the Due Process Clause of the Fifth Amendment.

**A. Equal Protection.** We agree with the district court that appellants' alternative equal protection argument is without merit. When a federal economic or social welfare program is challenged on equal protection grounds, and no suspect class or fundamental constitutional right is implicated, the proper standard of judicial review is rational basis, the "paradigm of judicial restraint." FCC v. Beach Communications, Inc., 508 U.S. 307, 314 (1993). Congress does not violate the right to equal protection "merely because the classifications made by its laws are imperfect," Dandridge v. Williams, 397 U.S. 471, 485 (1970), "or because in practice

[a classification] results in some inequality," <u>Lindsley v. Natural Carbonic Gas Co.</u>, 220 U.S. 61, 78 (1911). "In areas of social and economic policy, a statutory classification . . . must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." <u>Beach Communications</u>, 508 U.S. at 313.

Distributing Social Security and Medicare benefits is a massive undertaking which "requires Congress to make many distinctions among classes of beneficiaries while making allocations from a finite fund." <u>Bowen v. Owens</u>, 476 U.S. 340, 345 (1986). Accordingly, the Supreme Court has rejected numerous equal protection challenges to the ways in which these benefits are distributed. Congress adopted the Medicare+Choice program as a means of containing costs and expanding health care delivery options. These are legitimate objectives. Appellants argue that the Medicare+Choice formula is irrational because it discriminates against Medicare beneficiaries enrolled with efficient providers, like those in Minnesota. We reject this argument for the reasons stated by the district court:

> [T]his decision -- to allow managed care organizations to share "savings" with Medicare beneficiaries instead of requiring them to return the difference to the Medicare program itself -- hardly renders the Medicare+Choice program unconstitutional on equal protection grounds. . . . The Medicare+Choice program increases the health care options of a number of elderly Americans while reducing the strain on the public fisc. The fact that not all elderly Americans . . . enjoy the same windfall as others is unfortunate, but not unconstitutional. Perhaps there are better solutions or solutions that are more fair, but the Medicare+Choice payment method is certainly "rational" in a constitutional sense.

102 F. Supp. 2d at 1125. It was not irrational or arbitrary for Congress to devise a payment formula based on local health care costs and then to encourage cost-efficient managed care providers to increase benefits for their Medicare enrollees. Though the

-5-

resulting geographic benefit discrepancies may seem unfair, "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." Beach Communications, 508 U.S. at 313.

**B. The Right to Travel.** No doubt fearing that the Medicare+Choice formula would survive rational basis review, appellants primarily contend that it must be subjected to, and cannot survive, strict scrutiny because it impinges upon the constitutional right to travel. The district court concluded that the formula does not implicate the constitutional right to travel. 102 F. Supp. 2d at 1126-28. We agree.

Although the word travel is not found in the Constitution, the Supreme Court has frequently recognized "the constitutional right to travel from one State to another." Saenz v. Roe, 526 U.S. 489, 498 (1999) (quotation omitted). Because travel is a fundamental right, "any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." Shapiro v. Thompson, 394 U.S. 618, 634 (1969). In Saenz, 526 U.S. at 500, the Court recently reviewed its many right-to-travel cases and concluded that this right -

> embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

Appellants' right-to-travel claims do not fall within the three components identified in Saenz. Rather, in arguing that the Medicare+Choice formula must be subjected to the strict scrutiny applied in right-to-travel cases, appellants rely primarily on dicta from the plurality opinion in an earlier case stating that "[a] state law implicates the right to travel when it actually deters such travel . . . ." Attorney

General of New York v. Soto-Lopez, 476 U.S. 898, 903 (1986) (plurality opinion). The constitutional right to travel is implicated in this case, appellants argue, because Mary Sarno and others are deterred from moving to a community they would prefer by the reduced Medicare benefits they would receive from a managed care provider in that other community. We reject this right-to-travel theory for several reasons.

First, and most importantly, Soto-Lopez -- and the Court's other modern cases -- have applied the federal constitutional right to travel to *state* legislation that had a negative impact on travel between the various States.[3] Here, on the other hand, appellants attack a *federal* statutory regime because it allegedly deters interstate travel. In effect, appellants argue that a federal program that fails to achieve nationwide uniformity in the distribution of government benefits is subject to strict scrutiny because it will deter travel to unfavored locales. Such a contention is clearly too broad.[4] Not surprisingly, it finds no support in the Supreme Court's right-to-travel cases. Instead, the Court has emphasized time and again that rational basis review is appropriate in considering the constitutionality of federal social welfare programs such as Medicare. See Bowen v. Gilliard, 483 U.S. 587, 601-03 (1987) (rejecting the argument that an AFDC amendment should be subjected to "heightened scrutiny" because it "interferes with a family's fundamental right to live in the type of family unit it chooses").

---

[3]Except for cases dealing with federal restrictions on international travel, such as Aptheker v. Secretary of State, 378 U.S. 500, 503-04 (1964), the Court's right-to-travel jurisprudence has focused on a fundamental issue of federalism, the extent to which States may restrict American citizens' right to travel within their nation. See, e.g., the concurring opinions of Justice Brennan and Justice O'Connor in Zobel v. Williams, 457 U.S. 55, 65, 71 (1982).

[4]Appellants' theory would seemingly call into question an entire host of federal programs, including Medicaid, Temporary Assistance to Needy Families, and numerous agricultural subsidies, all of which provide different benefit levels based on regional price conditions.

Second, appellants cite no later case applying the "deterrent" dicta of Soto-Lopez.  Earlier cases such as Shapiro and Memorial Hospital v. Maricopa County, 415 U.S. 250, 257 (1974), spoke of state restrictions that "served to *penalize* the exercise of the right to travel."  In Saenz, the Court summarized its right-to-travel jurisprudence without citing Soto-Lopez, and it rejected an "actual deterrence" analysis, focusing instead on "the citizen's right to be treated equally in her new State of residence."  526 U.S. at 504-05.  Here, Sarno would be treated equally with other Minnesotans if she moved there; she is deterred from moving because she would be voluntarily giving up more generous benefits available in Florida.  In these circumstances, the Medicare+Choice formula is not affirmatively *penalizing* her right to travel.  We conclude the Supreme Court would not extend the constitutional right to travel to governmental disincentives of this type, provided of course that they withstand rational basis review.

For these reasons, and those lucidly stated by the district court, see 102 F. Supp. 2d at 1126-28, we conclude that the right to travel is not implicated by the Medicare+Choice formula and therefore is subject only to rational basis review.  As the current formula satisfies this deferential standard, the judgment of the district court must be affirmed.  However unfairly the current Medicare Part C funding mechanism may seem to impact some classes of Medicare beneficiaries, "the fact the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration."  United States R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 179 (1980).

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-