# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

June 25, 2018

*By the Court*\*:

No. 17-3163

| | |
|---|---|
| PLANNED PARENTHOOD OF INDIANA AND KENTUCKY, INC., *et al.*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *Plaintiffs-Appellees*, | |
| *v*. | No. 1:16-cv-00763-TWP-DML |
| COMMISSIONER OF THE INDIANA STATE DEPARTMENT OF HEALTH, *et al.*, | Tanya Walton Pratt, *Judge*. |
| *Defendants-Appellants*. | |

## O R D E R

Defendants-appellants have requested en banc review in this case limited only to the question of the constitutionality of Ind. Code § 16-34-3-4, which regulates the disposal of fetal remains after an abortion or miscarriage. On June 8, 2018, the court granted the petition and vacated Part II.B of the panel's opinion of April 19, 2018, *Planned Parenthood of Ind. and Ky., Inc. v. Comm'r of Ind. State Dept. of Health*, 888 F.3d 300, 307–10 (7th Cir. 2018). However, information coming to the attention of a member of the court caused that judge to conclude that recusal was necessary and that the judge had been ineligible to vote on the petition for rehearing en banc. Taking into account that judge's recusal, the vote of the circuit judges in regular active service was evenly divided, and thus the necessary majority required by 28 U.S.C. § 46(c) for rehearing en banc was, and is, not present. Judges Easterbrook, Kanne, Sykes, Barrett, and Brennan voted to grant rehearing en banc. We therefore **VACATE** the order of June 8, 2018, and reinstate the panel's opinion.

---

\* Judge Scudder took no part in the consideration or decision of this matter.

WOOD, *Chief Judge*, with whom *Circuit Judges* ROVNER and HAMILTON join, concurring.    Not every case in a highly controversial area deserves to be reheard by the *en banc* court. Just as the Supreme Court passes by many potentially interesting and important cases when it exercises its *certiorari* jurisdiction, particularly when either the facts or the law may stand in the way of a clean decision on the merits of the issue that concerns the Court, we must exercise the same restraint. Unless it is possible to identify a properly presented, important issue of law that lies within the power of this court to resolve, we should refrain from rolling out the big guns of the full court. Otherwise we risk issuing what would be at best an opinion correcting an error made by a panel, and at worst an advisory letter to the Supreme Court. The present case is not one that meets those criteria. Idiosyncratic procedural hurdles would block our ability to conduct a thorough review of the only issue the state of Indiana has asked us to rehear—the constitutionality of the fetal disposal provisions of House Enrolled Act No. 1337, Ind. Code §§ 16-34-3-4(a), 16-41-16-4(d), 16-41-16-5, and 16-41-16.7.6.

The state has not asked for rehearing *en banc* of the panel's ruling on the Sex Selective and Disability Abortion Ban, Ind. Code § 16-34-4, and the reason why is obvious: only the U.S. Supreme Court has the power to decide whether to change the rule of *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), which holds unequivocally that "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." See *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("it is this Court's prerogative alone to overrule one of its precedents"). The state's decision in this respect amounts to a waiver of its right to have this court reconsider that part of the panel's decision. In light of that waiver, I do not address that part of the case. The Supreme Court does not need essays from different federal judges to assist its own thinking. Should the state seek further review, I am confident that the parties will brief the issue ably, and that numerous *amicus curiae* contributions will also be filed. My focus instead is on the issue that was presented to us: the fetal disposal rules.

Planned Parenthood conceded that the disposal regulation does not implicate a fundamental right, and it then moved directly to the conclusion that the proper level of inquiry was rational-basis review. The panel properly decided the case in light of that strategic litigation choice. *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 888 F.3d 300, 307–08 (7th Cir. 2018). In doing so, the panel ably applied that level of scrutiny. I have little to add to its analysis except to wonder how, if respect for the humanity of fetal remains after a miscarriage or abortion is the state's goal, this statute rationally achieves that goal when it simultaneously allows any form of disposal whatsoever if the mother elects to handle the remains herself. It is not hard to hypothesize

disposal methods that would be far less respectful than those presently used for biological materials in clinics.

The problem, however, is that the parties' concession with respect to the standard of review—a choice that is capable of dictating the outcome—was probably incorrect. Without that concession, the court's review would have taken a different turn. This case involves a fundamental right: the woman's right to decide whether to carry a child (or, put negatively, whether to have an abortion). See *Roe v. Wade*, 410 U.S. 113 (1973). In my view, statutes such as Indiana's cannot properly be examined if the question of the standard of review is off the table, as it was for our panel.

In many cases, that choice will be outcome determinative. A look at the relevant Supreme Court decisions strongly suggests that rational-basis is not the proper level of scrutiny. The disposal of an aborted (or miscarried) fetus is just the final step in the overall process of terminating (or losing) a pregnancy. It thus implicates an interest with heightened constitutional protection: "the right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State." *Casey*, 505 U.S. at 846. Therefore, the question for this court should have been whether the law "has the effect of placing a substantial obstacle in the path of a woman's choice." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016) (quoting *Casey*, 505 U.S. at 877). To move forward with this case as if rational-basis were the proper standard would force us to decide an important issue with blinders on. The court would need to ignore the Supreme Court's admonition not to "equate the judicial review applicable to the regulation of a constitutionally protected personal liberty interest with the less strict review applicable where, for example, economic legislation is at issue." *Whole Woman's Health*, 136 S. Ct. at 2309. The fact that fetal-disposal regulations potentially affect the constitutional right to obtain a pre-viability abortion distinguishes this law from the countless cases that do not implicate a constitutional right—say, animal-welfare statutes. There are plenty of rationally enacted laws that do not burden any constitutional rights.

It does not matter for the constitutional concerns presented in this case that the disposal statute operates at the end of the procedure. Hypotheticals should make that point clear. A post-procedure spousal notification law, perhaps enforced by a criminal penalty, is no less a substantial obstacle than a pre-procedure notification requirement. And I expect that any woman would experience an undue burden on her right to have a pre-viability abortion if state law required her to check herself into a mental hospital for a week after the procedure was complete. In keeping with these principles, other courts have applied not the rational-basis standard, but the undue-burden standard, when considering the lawfulness of fetal remains regulations. See *June Med. Servs. LLC v. Gee*, 280 F. Supp. 3d 849 (M.D. La. 2017); *Hopkins v. Jegley*, 267 F. Supp. 3d 1024, 1098 (E.D. Ark. 2017), appeal filed, No. 17-2879 (8th Cir. Aug. 28, 2017); *Whole Woman's Health v. Hellerstedt*, 231 F. Supp. 3d 218,

227–29 (W.D. Tex. 2017).

The forced limitation of this case to the rational-basis standard would distort any *en banc* consideration we could give. It is entirely possible that a state law would pass rational-basis, one-step-at-a-time, review, but would nonetheless impose an undue burden on a women's choice to have an abortion. The examples reviewed in *Casey* are good illustrations. That possibility suggests that leaving the panel's decision intact is unlikely to spell the end of fetal disposal litigation even in this circuit. Every nuance in this area is litigated over and over. Nor does our denying the motion for rehearing bring to an end litigation already progressing across the country. See, *e.g.*, *Hopkins v. Jegley*, No. 17-2879 (8th Cir. appeal docketed Aug. 28, 2017); *June Med. Servs. LLC v. Gee*, No. 3:16-cv-00444-BAJ-RLB (M.D. La. docketed July 1, 2016); *Whole Woman's Health v. Smith*, No. 1:16-cv-01300-DAE-AWA (W.D. Tex. docketed Dec. 12, 2016). If the Supreme Court wants to take some aspect of this issue, it will have ample opportunity to do so.

Moreover, further review of this case would necessarily proceed without the benefit of a record developed with the proper legal standard in mind. Given the posture in which this case comes before us, it is unremarkable that, as Judge Easterbrook observes, plaintiffs have not contended or shown that the fetal disposal statute is a substantial obstacle. Easterbrook, J., dissenting, *post* at slip op. 7.   Litigating on a "rational-basis" standard makes such evidence unnecessary; under the proper standard of review, however, evidence does make a difference, and it should be developed before the court charges headlong into such an important issue. And that is not the only evidence currently missing as a result of a misapprehension of the standard of review. For example, the evidence is thin to nonexistent on the costs imposed by the disposal regulations—costs that include not only a higher out-of-pocket dollar price for the procedure, but that might include psychological trauma that chills women from seeking abortions or medical care in relation to miscarriages because of the potential stigmatizing impact of these measures. Nor did the plaintiffs have reason to explore how the disposal statute might work in tandem with other regulations in a way that unduly burdens the right to choose, as is required under *Whole Women's Health*. 136 S. Ct. at 2309, 2313. The record simply did not explore what should have been the central issues and what are likely to be the primary points of contention in the next case to come along.

It would be a waste of this court's resources to accept a case for *en banc* review if the only thing we could say is that the parties' decision to use rational-basis review is binding on us, but that everything might be different if the standard from *Casey* and *Whole Women's Health* were applied and a proper record in light of that standard had been developed. It would not quite be a hypothetical case, but it would be too close for comfort. Important as these issues are, the only prudent course to take is to forgo *en banc* review this time and await a case that more cleanly presents all relevant issues.

I therefore concur in the decision to deny rehearing *en banc*.

EASTERBROOK, *Circuit Judge*, with whom *Circuit Judges* SYKES, BARRETT, and BRENNAN join, dissenting from the denial of rehearing en banc. This case concerns two statutes. The first, which I call the eugenics statute, makes it illegal to perform an abortion for the purpose of choosing the sex, race, or (dis)abilities of a child. Ind. Code §§ 16-34-4-1 to 16-34-4-9. The second, which I call the disposal statute, requires fetal remains to be cremated or buried; they cannot be placed in medical trash, although the remains of multiple fetuses may be incinerated together. Ind. Code. §§ 16-34-3-4(a), 16-41-16-4(d), 16-41-16-5, 16-41-16-7.6.

The panel held the eugenics statute unconstitutional because the lead opinion in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 879 (1992) (O'Connor, Kennedy & Souter, JJ.), says that "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." The panel held the disposal statute unconstitutional because fetal remains are not remains of "persons" within the scope of the Due Process Clause, see *Roe v. Wade*, 410 U.S. 113, 158–59 (1973), making it irrational to require them to be treated as if they were. See 888 F.3d 300, 305–07 (eugenics statute), 307–10 (disposal statute) (7th Cir. 2018).

I am skeptical about the first of these conclusions because *Casey* did not consider the validity of an anti-eugenics law. Judicial opinions are not statutes; they resolve only the situations presented for decision. Consider a parallel in private law. Judges often said that employers could fire workers for any or no reason. That's the doctrine of employment at will. But by the late twentieth century courts regularly created exceptions when the discharge was based on race, sex, or disability. *Casey* does not tell us whether a parallel "except" clause is permissible for abortions.

*Casey* and other decisions hold that, until a fetus is viable, a woman is entitled to decide whether to bear a child. But there is a difference between "I don't want a child" and "I want a child, but only a male" or "I want only children whose genes predict success in life." Using abortion to promote eugenic goals is morally and prudentially debatable on grounds different from those that underlay the statutes *Casey* considered.

None of the Court's abortion decisions holds that states are powerless to prevent abortions designed to choose the sex, race, and other attributes of children. It is becoming possible to control some aspects of embryos' genomes. See Clyde Haberman, *Scientists Can Design 'Better' Babies. Should They?*, NEW YORK TIMES, June 10, 2018. States may regulate that process when conception is by *in vitro* fertilization. Does the Constitution supply a right to evade regulation by choosing a child's genetic makeup after conception, aborting any fetus whose genes show a likelihood that the child will be short, or nearsighted, or intellectually average, or lack perfect pitch—or be the

"wrong" sex or race? *Casey* did not address that question. We ought not impute to the Justices decisions they have not made about problems they have not faced.

Still, Indiana has not asked us to rehear this part of the panel's decision. Only the Supreme Court can determine the answer; we might guess, but the Justices can speak authoritatively. So although 18 states have filed an *amicus* brief asking us to rehear this part of the decision en banc, I am content to leave it to the Supreme Court.

The panel's holding on the disposal statute is another matter, because "X is not a person" does not imply "X is beyond regulatory authority." Think of animal-welfare statutes. Dogs may not be beaten for fun. Bullfights are forbidden. Horses may not be slaughtered in Illinois for the dinner table under a statute this circuit sustained largely on animal-welfare grounds. See *Cavel International, Inc. v. Madigan*, 500 F.3d 551 (7th Cir. 2007). Accord, *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326 (5th Cir. 2007). Many states have laws that prescribe how animals' remains must be handled. See, e.g., Ala. Code §3-1-28; Ga. Code §4-5-5; Iowa Code §167.18(1); Kan. Stat. §47-1219; Mich. Comp. Laws §287.671(2); Mo. Stat. §269.020; 3 Pa. Stat. §2352(a)(4); Utah Code §4-31-102(1); Wis. Stat. §95.50; Wyo. Stat. §35-10-104. The panel has held invalid a statute that would be sustained had it concerned the remains of cats or gerbils.

Animal-welfare statutes are rational not simply because all mammals can feel pain and may well have emotions, but also because animal welfare affects human welfare. Many people feel disgust, humiliation, or shame when animals or their remains are poorly treated. We wrote in *Cavel* that a ban on slaughtering horses for human consumption is rationally related to the goal of reducing dismay at poor treatment of these creatures. 500 F.3d at 557. Isn't that equally true of a statute about fetal remains?

In giving a negative answer, the panel created a conflict with *Planned Parenthood of Minnesota v. Minnesota*, 910 F.2d 479 (8th Cir. 1990). The Eighth Circuit sustained a statute equivalent to Indiana's. The majority distinguished *Minnesota* on the ground that Planned Parenthood of Minnesota conceded that the state has a legitimate interest in protecting public sensibilities, while Planned Parenthood of Indiana and Kentucky denies that. 888 F.3d at 309. This shows a difference in litigation strategies, but to deny that public sensibilities can matter (as the panel did) creates a conflict with decisions in many circuits, on subjects ranging from animal welfare to aesthetic zoning to obscenity. Many a state law promotes public morals in a way that John Stuart Mill would disapprove, but he was not among the drafters of the Fourteenth Amendment. (The overlap between Mill's *On Liberty* and Mr. Herbert Spencer's *Social Statics* is considerable, but Justice Holmes's dissent in *Lochner v. New York*, 198 U.S. 45, 75–76

(1905), has prevailed and *Social Statics* is not part of the Constitution. Neither is *On Liberty*.)

The panel went on to observe that Indiana is concerned about the interest of the fetus, while Minnesota isn't. This implies that the same statute could be passed again in Indiana, and held valid, as long as the legislative history is different. Yet the intent behind a law does not affect rational-basis analysis. A law is valid if a rational basis can be imagined, no matter what legislators thought or said. See, e.g., *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313–17 (1993). The panel also observed that the disposal statute does not prevent a woman from taking possession of the fetal remains and disposing of them as she pleases, 888 F.3d at 309, which is true but irrelevant. A state need not regulate comprehensively in order to regulate at all. See, e.g., *Bowen v. Owens*, 476 U.S. 340, 347 (1986). It may take one step at a time.

Plaintiffs have not argued that the disposal statute places a "substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Casey*, 505 U.S. at 878 (lead opinion), quoted and applied in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2300 (2016). The disposal statute operates after the abortion is complete. The costs of satisfying the statute may be rolled into the procedure's price and so in principle could affect a woman's decision to have an abortion. But plaintiffs do not contend, and the record does not show, that the costs are substantial. (They estimate an incremental cost of $6 to $12 but do not explain how the figure was derived.) I could not find data suggesting that the price of an abortion in Minnesota rose at all after it adopted a disposal statute, that abortion services there have become harder to procure, or that the number of abortions has been affected. Rational-basis analysis therefore is the appropriate approach, and our panel did not follow the Supreme Court's rules for rational-basis inquiry. There is no need to leave this matter to the Justices; rehearing en banc is preferable to a constitutional decision preventing Indiana from implementing a law materially the same as one that has been held valid, and operates daily, elsewhere in the nation.

Chief Judge Wood observes that plaintiffs' litigation choices, including their decision to produce "thin to nonexistent" (slip op. 4) evidence about the effects of the disposal statute, prevent us from deciding whether this law puts a "substantial obstacle" in a woman's path. She invites future litigants to supply more evidence and make different legal arguments. But if more than 25 years' experience in Minnesota does not furnish evidence of a substantial obstacle, where would it come from? And why would any other litigant choose a different strategy? Now that the disposal statute has been held to lack a rational basis, there will be no more litigation in this circuit, no

opportunity for the full court to consider other lines of argument. Kicking the can down the road is not an attractive option, for we have reached the road's end.