# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary Gausman                     :

                          :

           v.             :    No. 440 C.D. 2017

                       :    Argued: May 7, 2018

Karen Gausman, City of Erie    :

Officers' and Employees' Retirement  :

Plan                       :

                       :

Appeal of: Karen Gausman     :


**BEFORE:**    **HONORABLE RENÉE COHN JUBELIRER,** Judge
                  **HONORABLE ANNE E. COVEY,** Judge
                  **HONORABLE CHRISTINE FIZZANO CANNON,** Judge


<u>OPINION NOT REPORTED</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER[1]**              **FILED: August 16, 2018**

      Karen Gausman (Wife) seeks to compel the City of Erie Officers' and Employees' Retirement Plan (Plan) to approve a proposed qualified domestic relations order (QDRO) that she negotiated during her divorce from Plan participant Gary Gausman (Participant). The Plan previously refused to approve the QDRO because it provided, in relevant part, that Wife would be entitled to survivor benefits upon Participant's death. The City of Erie's Pension Ordinance expressly prohibits survivor benefits to ex-spouses. Wife filed a Motion for Special Relief (Motion) asking the Court of Common Pleas of Erie County (common pleas) to order the Plan

---

[1] This matter was reassigned to this author on July 9, 2018.

to approve the QDRO.  Common pleas denied the Motion by Order dated March 9, 2017.  On appeal, Wife claims common pleas erred in refusing to designate her as a surviving spouse and challenges the Plan's treatment of ex-spouses on constitutional grounds.  Discerning no error or constitutional violations in common pleas' decision, we affirm.[2]

I.     **Background**

Participant and Wife married in October 1991.  After 22 years of marriage, Participant filed for divorce from Wife in January 2014 on the ground that the marriage was irretrievably broken.  Wife sought equitable distribution of the parties' marital assets, and Participant and Wife subsequently entered into a Marital Settlement Agreement (MSA), whereby Participant and Wife agreed, *inter alia*, to equally share the marital portion of Participant's pension by deferred distribution via a QDRO.[3]  The MSA further provided that "Wife shall be entitled to a survivor benefit for her lifetime equal to her share of the marital portion of the benefit." (MSA, art. IX, ¶ 6.)

In accordance with the MSA, a proposed QDRO was prepared and submitted to the Plan for approval.  The Plan responded with a number of concerns that needed to be addressed before the QDRO was approved.  Relevant to this appeal was the Plan's proposed changes to Paragraph 10 of the QDRO, which were as follows:[4]

---

[2] The issue before us is not whether Wife is entitled to any benefit, but whether the Plan is required to pay Wife that benefit directly based upon a privately negotiated QDRO between her and Participant.  We pass no judgment on whether Wife is entitled to the equivalent of survivor benefits by some other means, such as an annuity purchased by Participant.

[3] The MSA was ultimately approved by common pleas.

[4] The language that the Plan wanted omitted is reflected by strikethrough and the proposed additions are underscored.

10. If the Participant predeceases the Alternate Payee[5]~~, either~~ before ~~or after the~~ Participant's retirement, then the Alternate Payee shall ~~receive the marital portion (calculated using the fraction defined in Section 8) of the Plan's 50% survivor annuity. Such survivor annuity shall be payable to the Alternate Payee for her lifetime and irrespective of her or the Participant's marital status. If there is any cost to provide such former spouse survivor annuity for the Alternate Payee, the cost shall be deducted from the Alternate Payee's share of the Participant's monthly pension, and such cost shall not reduce the Participant's portion of the pension benefit. If the Plan pays a lump sum refund of employee contributions or any other pre-retirement death benefit, the Alternate Payee shall receive 50% times the marital coverture fraction of such lump sum payment or death benefit~~ <u>not be entitled to payment of any pre-retirement death benefit from the Plan. Alternate Payee shall only be entitled to receive the percentage of the marital portion of Participant's undistributed contributions (see Paragraph 8 for the formula to derive said percentage), if any, after the death of Participant's surviving spouse, if Participant remarried, and/or the death of his/her/their surviving children prior to their attaining the age eighteen (18).</u>

(Plan Letter dated May 13, 2016, Reproduced Record (R.R.) at 35a.)

The Plan also requested Paragraph 11 of the QDRO to be omitted. Paragraph 11 originally read:

11. If the Alternate Payee dies before the Participant, the Alternate Payee's share of any monthly retirement pension or lump sum payment ([Deferred Retirement Option Probram] or refund of contributions) shall be paid if, as and when the Participant receives such payment, to the Alternate Payee's beneficiary as designated on the form provided by the Plan. However, if the Plan does not allow the Alternate Payee to designate a beneficiary, then the Alternate Payee's portion of the assigned benefits herein shall revert to the Participant.

(Original Proposed QDRO, R.R. at 31a.) The Plan proposed replacing Paragraph 11 with the following language: "In the event Participant dies survived by Alternate

---

[5] Wife is identified as "Alternate Payee" under Paragraph 4 of the QDRO.

3

Payee, the Alternate Payee's interest in Participant's retirement benefits under the Plan shall cease." (Plan Letter dated May 13, 2016, R.R. at 35a.)

Finally, the Plan requested the following language be added to Paragraph 12 of the QDRO:

> Nothing in this Order requires the Plan to provide either the Participant or the Alternate Payee with:
>
> > a.    Any type or form of benefit not otherwise provided under the Plan; or
> >
> > b.    Any increases in benefits to which the Participant is not otherwise entitled.

(*Id.*)

Wife submitted a revised QDRO, which was also rejected by the Plan. As a result of the Plan's continued refusal to approve the QDRO, Wife filed her Motion and subsequently joined the Plan as an additional defendant. The Plan originally filed preliminary objections to the Motion but subsequently filed an Answer, rendering the preliminary objections moot.

Argument on the Motion was held on December 1, 2016. Common pleas issued its Opinion and Order denying the Motion on March 9, 2017. Common pleas explained that the Pension Ordinance expressly provided that "a former spouse of a Participant shall not be treated as the spouse or Surviving Spouse for any purposes under the plan." (Common Pleas Opinion (Op.) at 4 (quoting Pension Ordinance, Article 145.15(f)(2)) (emphasis omitted).) Common pleas rejected Wife's argument that equity requires that she be entitled to survivor benefits. It also found that the Plan did not violate the principle of equal protection because the different treatment of current spouses and ex-spouses passes the rational basis test. (*Id.* at 9.) Finally,

4

common pleas determined that Wife had no property interest in the survivor benefits and, therefore, could not prevail on due process grounds. (*Id.* at 10.)

Wife appeals from common pleas' Order, raising three issues: (1) whether common pleas erred or abused its discretion when it refused to designate Wife as a surviving spouse; (2) whether common pleas erred in denying Wife's equal protection claim by finding there was a rational basis to deny an ex-spouse survivor benefits; and (3) whether common pleas erred in concluding Wife had no property interest in the survivor benefits, and as a result, there was no due process violation.[6]

Wife first argues that common pleas erred by refusing to designate her as a surviving spouse because the survivor benefit was acquired during the couple's 22-year marriage and is, therefore, marital property.[7] The Plan responds that a QDRO negotiated between two divorcing spouses cannot alter the amount or form of pension benefits available under the terms of the Plan. Based upon our precedent, the Plan is correct.

In *Maloney v. Maloney*, 754 A.2d 36, 38 n.3 (Pa. Cmwlth. 2000), we held that a QDRO "may not alter the amount or form of plan benefits." There, an ex-wife sought a court order directing the borough to implement a domestic relations order (DRO) entered into between ex-wife and her ex-husband, a retired police officer, which would entitle her to half of ex-husband's pension benefits. Ex-husband died before the DRO was implemented, and the borough refused to make payments to ex-wife because, under the terms of the plan, an ex-spouse was not entitled to survivor benefits. Ex-wife then brought the action against the borough seeking enforcement

_____

[6] Wife raises a fourth issue: whether common pleas erred in denying her Motion. This issue appears duplicative of the others. In fact, in her brief she simply incorporates her arguments related to the first three issues in the argument section for the fourth issue.

[7] "[M]arital property" is defined, in relevant part, as "all property acquired by either party during the marriage. . . ." Section 3501(a) of the Divorce Code, 23 Pa. C.S. § 3501(a).

5

of the DRO. The trial court granted ex-wife relief, and the borough appealed, arguing that upon ex-husband's death, ex-wife's entitlement to benefits ceased. We reversed the trial court, holding:

> The trial court . . . is altering the benefit scheme of the plan and ordering the [b]orough to pay a benefit not previously contracted for. Specifically, the trial court is ordering the [b]orough to pay survivor benefits to an ex-spouse when such benefits have not been provided for in the Ordinance.

*Id.* at 39.

We expressed sympathy for ex-wife's situation but noted there was no support to "allow[] a trial court, in the context of a divorce action, to alter the benefit scheme of a pension plan." *Id.* Accordingly, we held that the trial court erred in ordering survivor benefits. *Id.* at 40.

We reached a similar result in *Kenney v. City of Wilkes-Barre Police Pension Fund* (Pa. Cmwlth., No. 1334 C.D. 2009, filed February 3, 2010), slip op. at 4-5, wherein we reversed a trial court order that altered a pension plan when the pension ordinance contained no provision granting ex-spouse survivor benefits.[8] In *Kenney*, the ex-wife and participant negotiated a QDRO that provided ex-wife with half of the participant's monthly benefit. When participant died, the plan stopped making payments to ex-wife. The trial court found the QDRO required the payments and ordered the pension fund to reinstate benefits. Citing *Maloney*, we reversed, explaining that ex-wife's entitlement to benefits was dependent upon participant's right to receive benefits. *Id.* Because participant's right to benefits ceased upon his

---

[8] *Kenney* is an unreported panel decision of this Court, which is cited in accordance with Section 414(a) of this Court's Internal Operating Procedures, which provides that an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

6

death, we held ex-wife's right to benefits also ceased. *Id.* at 5. "To conclude otherwise would impermissibly alter the benefit structure of the [p]ension [o]rdinance." *Id.*

Here, Wife is similarly seeking benefits not otherwise provided under the Plan. The Pension Ordinance defines "[s]urviving [s]pouse" as "a living individual who was legally married to the Participant and is married to the Participant at the time of the Participant's death."[9] (Pension Ordinance, Article 145.02(hh).) As Participant's and Wife's divorce was finalized on March 13, 2017, Wife is no longer legally married to Participant and cannot be a "surviving spouse" under the Plan. Furthermore, the Pension Ordinance provides that "a former spouse of a Participant shall not be treated as the spouse or surviving spouse for any purposes under the plan." (*Id.*, Article 145.15(f)(2).) Therefore, common pleas did not err in refusing to designate Wife as a surviving spouse when the Pension Ordinance expressly stated that ex-spouses were not surviving spouses.

Wife requests this Court to invoke its equitable power and designate her as a surviving spouse. However, although a court has broad equitable powers, "[w]hen the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights." *Cent. Storage & Transfer Co. v. Kaplan*, 389 A.2d 711, 715 (Pa. Cmwlth. 1978) (quotation omitted), *aff'd*, 410 A.2d 292 (Pa. 1979). Here, the Pension Ordinance clearly establishes that ex-spouses "shall not be treated as the spouse or surviving spouse for any purposes." (Pension Ordinance,

---

[9] This definition applies if the marriage occurred before retirement, as is the case here. If the marriage occurred post-retirement, "surviving spouse" is defined as "a living individual who was legally married to the Participant and is married to the Participant at the time of the Participant's death and for the twelve months immediately preceding the Participant's death." (Pension Ordinance, Article 145.02(hh).)

Article 145.15(f)(2).)  Therefore, as equity should follow the law, equity will not be used to unsettle those rights.

Wife also argues that the Plan's disparate treatment of ex-spouses and current spouses violates equal protection.  She contends it is irrational that a new spouse married for just one year to the plan participant would be entitled to greater benefits than an ex-spouse of 22 years.  The Plan responds that rational bases exist for the distinction, including cost savings and protecting the interests of current spouses.  The Plan also points out that the Third Class City Code makes provision of survivor benefits discretionary.  11 Pa. C.S. § 14343(d) ("**If council elects, by ordinance,** to make the payments, the surviving spouse. . . .") (emphasis added).  Because providing survivor benefits is discretionary, the Plan argues its decision to provide such benefits to only certain classes of individuals necessarily is rational.

The parties agree that the classification here is subject to the rational basis test, which is the most deferential standard of review.  *Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1211 n.19 (Pa. 2009).  Whether a classification passes the rational basis test involves a two-step analysis:  "[f]irst, we must determine whether the challenged statute seeks to promote any legitimate state interest or public value.  If so, we must next determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests."  *Curtis v. Kline*, 666 A.2d 265, 269 (Pa. 1995).  "[B]ecause a presumption of constitutionality attaches to any lawfully enacted legislation, the burden is upon the party attacking a statute to rebut the presumption of constitutionality by a clear, palpable, and plain demonstration that the rational basis test is not met."  *Probst v. Dep't of Transp., Bureau of Driver Licensing*, 849 A.2d 1135, 1144 (Pa. 2004).  So long as "the classification bears some rational relationship to a legitimate government end," it

will be upheld. *City of Phila. Bd. of Pensions & Ret. v. Bordley*, 481 A.2d 690, 691 (Pa. Cmwlth. 1984). "A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification." *Curtis*, 666 A.2d at 268. The "[C]ourt is free to hypothesize reasons the legislature might have had for the classification." *Id.* Importantly, even if the Court "question[s] the soundness or wisdom of the distinction," it "cannot declare the classification void" if the classification is genuine. *Id.*

It is also important to bear in mind that "a court may not examine the application of a statute to individual members of a class as part of its equal protection analysis." *Bordley*, 481 A.2d at 692. "The validity of a broad legislative classification is not properly judged by focusing on the portion of the class that is affected most harshly by its terms." *Id.* Stated otherwise, equal protection is not offended because the classification "'in practice . . . results in some inequality.'" *Id.* at 691 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)). Therefore, the length of Wife and Participant's marriage and their agreement via a privately negotiated QDRO to modify the terms of the Plan, which otherwise does not recognize an ex-spouse as a "surviving spouse," is of no moment. Instead, Wife's equal protection claim must be judged on the distinction the Plan draws generally between spouses and former spouses.

With the above principles in mind, we first examine "whether the challenged statute seeks to promote any legitimate state interest or public value." *Curtis*, 666 A.2d at 269. We must conclude it does. Both the United States Supreme Court and the courts of this Commonwealth have found financial or fiscal concerns are legitimate state interests. In *Schweiker v. Wilson*, 450 U.S. 221 (1981), the United

9

States Supreme Court found the exclusion of Supplemental Security Income benefits to individuals institutionalized in public mental health facilities that do not receive Medicaid funds toward their care did not violate equal protection. The Court held budgetary constraints were a legitimate governmental interest for the distinction, explaining that the "Court has granted a strong presumption of constitutionality to legislation conferring monetary benefits . . . because it believes that Congress should have discretion in deciding how to expend necessarily limited resources." *Id.* at 238 (internal quotation and citation omitted).

Our state Supreme Court reached a similar result in *Kramer v. Workers' Compensation Appeal Board (Rite Aid Corporation)*, 883 A.2d 518 (Pa. 2005). There, a claimant challenged a provision of the Workers' Compensation Act[10] (WC Act), which allowed an employer to take an offset against a claimant's workers' compensation benefits in the amount of a severance payment received by the claimant, on the grounds it violated equal protection. The Pennsylvania Supreme Court held there was no classification, but explained that even if there was a classification, the provision would withstand rational basis scrutiny. In so holding, the Court explained that "[r]easonable workers' compensation cost containment for employers, and the concomitant competitive benefit such cost containment offers for Pennsylvania businesses, unquestionably is a legitimate state concern." *Id.* at 535.

When faced with another offset provision in the WC Act, this Court likewise held it satisfied the rational basis test. *Caputo v. Workers' Comp. Appeal Bd. (Commonwealth of Pa.)*, 34 A.3d 908 (Pa. Cmwlth. 2012). In that case, the provision allowed employers to offset workers' compensation benefits by a portion of the old age Social Security retirement benefits a claimant receives. Citing *Kramer*, we held

---

[10] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

10

that allowing an employer to offset workers' compensation benefits by half of a claimant's Social Security retirement benefits was reasonably related to the legitimate governmental interest of reducing an employer's workers' compensation costs.[11] *Id.* at 916-17.

What *Schweiker*, *Kramer*, and *Caputo* illustrate is that cost savings have been recognized as a legitimate state objective on a number of occasions. Therefore, the Plan's stated reason for denying survivor benefits to ex-spouses but not current spouses because of the savings the Plan realizes by doing so is a legitimate objective of the Plan. This is particularly so when municipalities across the Commonwealth are struggling with funding pension plans.

Having concluded that cost savings is a legitimate objective, we must consider whether the Plan's different treatment of spouses and ex-spouses "is reasonably related to accomplishing that" legitimate objective. *Curtis*, 666 A.2d at 269. Again, we hold that it is. The United States Supreme Court has addressed the differing treatment of current spouses and former spouses in the Social Security context and held the distinction did not violate equal protection because the classification was a reasonable means to accomplish the desired end. In *Mathews v. De Castro*, 429 U.S. 181 (1976), the Court held the different treatment of current spouses and ex-spouses for purposes of Social Security comported with the primary objective of providing workers and their families with protection against loss of earnings caused by disability or retirement. There, the Court explained that "Congress could have rationally assumed that divorced husbands and wives depend less on each other for

---

[11] We also held a second governmental interest existed, which was to encourage individuals collecting Social Security retirement benefits to remain or reenter the workforce. *Caputo*, 34 A.3d at 918. Either of these bases would have been sufficient as only one rational basis is needed.

11

financial and other support than do couples who stay married." *Id.* at 188. Therefore, it was not irrational for Congress to treat the two classes differently.

When faced with a similar situation 10 years later, the United States Supreme Court reiterated that "it was rational for Congress to assume that divorced widowed spouses are generally less dependent upon the resources of their former spouses than are widows and widowers." *Bowen v. Owens*, 476 U.S. 340, 348-49 (1986). In that case, there was a challenge as to the constitutionality of a Social Security provision that authorized payment of survivor's benefits to a widowed spouse who remarried after age 60 but not to divorced widowed spouses who did the same. The Court upheld the statute, holding it satisfied the rational basis test. The Court cited *Mathews* and noted "divorce normally reduces dependency on the wage earner." *Id.* at 350. The Court stated:

> Presumably Congress concluded that remarriage sufficiently reduced that lesser dependency to the point where it could conclude that benefits no longer were appropriate. These views would be consistent with the position Congress has taken throughout . . . that divorced spouses are less dependent on the wage earner than spouses. Because divorced widowed spouses did not enter into marriage with the same level of dependency on the wage earner's account as widows or widowers, it was rational for Congress to treat these groups differently after remarriage.

*Id.*

Here, the Plan's differing treatment of spouses and ex-spouses is reasonably related to achieving cost savings and providing for current families. By not having to pay survivor benefits to ex-spouses, plans, such as the one here, can preserve their limited resources and ensure that they have the proper funding to pay participants and their current spouses. The United States Supreme Court has recognized that treating spouses and ex-spouses differently is reasonably related to achieving that

12

objective because ex-spouses are less likely to be dependent upon their ex-spouse's benefits. *Bowen*, 476 U.S. at 350; *Mathews*, 429 U.S. at 188. It is equally rational that the municipality here concluded that divorcees are less likely to be financially dependent upon their ex-spouses, and in seeking to conserve costs, any disparity should fall on former spouses. Accordingly, common pleas did not err in finding the classification between current spouses and ex-spouses passes the rational basis test.

Wife's final issue is whether common pleas erred in concluding she had no property interest in the survivor benefits, and as a result, there was no due process violation. She maintains the benefits that accrued over the 22 years of marriage are a protected property interest, of which she is being deprived. She argues "[i]t is irrational and unjust to deny a former spouse a survivor's benefit, and there is no rational basis for the [Plan's] decision." (Wife's Brief at 22.) The Plan counters that pension benefits are not a protected property right and thus not entitled to substantive due process protection, and even if Wife had a protected property interest in the survivor benefits, the Plan passes the due process analysis. It also points out Wife is still entitled to the marital portion of Participant's pension benefits, but the Plan cannot be compelled to pay Wife survivor benefits when Participant dies.

We need not resolve whether pension benefits are a protected property right, because, assuming they are, Wife's substantive due process claim fails. Like Wife's equal protection claim, the parties agree that the rational basis test applies to Wife's substantive due process claim. However, unlike equal protection where the focus of the rational basis test "is whether the law irrationally distinguishes between similarly situated classes," for substantive due process, the focus "is whether it was irrational for the law to have been passed at all." *Morris v. Pub. Sch. Employees' Ret. Sys.*, 538 A.2d 1385, 1389 (Pa. Cmwlth. 1988). "To prove that a statute is irrational

13

and, therefore unconstitutional, the challenger must show, for substantive due process purposes, that there is no relationship between the statute and a legitimate state interest," whereas for equal protection, the challenger must show "that the different treatment of the groups is unrelated to a legitimate state interest." *Id.*; *see also Khan v. State Bd. of Auctioneer Exam'rs*, 842 A.2d 936, 946 (Pa. 2004) ("To constitute a lawful exercise of the state's police power, social and economic legislation must first be directed toward a valid state objective. To withstand a substantive due process challenge, a statute or regulation must seek to achieve a valid state objective by means that are rationally related to that objective.") (internal citations omitted). The Pennsylvania Supreme Court has summarized the substantive due process analysis as follows: "[C]ourts must weigh the rights infringed upon by the law against the interest sought to be achieved by it, and also scrutinize the relationship between the law (the means) and that interest (the end)." *Nixon v. Commonwealth*, 839 A.2d 277, 287 (Pa. 2003) (emphasis omitted). Substantive due process "protect[s] citizens from arbitrary and irrational actions of the government." *Germantown Cab Co. v. Phila. Parking Auth.*, 171 A.3d 315, 327 (Pa. Cmwlth. 2017), *petition for allowance of appeal granted*, 184 A.3d 944 (Pa. 2018). Here, the Plan's decision to deny payment of survivor benefits to ex-spouses is neither arbitrary nor irrational. Rather, it has a rational relationship to the Plan's purpose, which is maximizing benefits for its participants. Therefore, common pleas did not err in finding no substantive due process violation.

14

Based upon the foregoing reasons, we agree with common pleas that the Plan cannot be compelled to pay survivor benefits to Wife after Participant's death. Accordingly, we affirm common pleas' Order.

                                        _____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary Gausman                      :

                               :

          v.                :    No. 440 C.D. 2017

                               :

Karen Gausman, City of Erie       :

Officers' and Employees' Retirement  :

Plan                         :

                               :

Appeal of: Karen Gausman      :

## **O R D E R**

**NOW**, August 16, 2018, the Order of the Court of Common Pleas of Erie County, dated March 9, 2017, is **AFFIRMED.**

 

_____

**RENÉE COHN JUBELIRER,** Judge

Gary Gausman :
            :
       v. :
            :
Karen Gausman, :
City of Erie Officers' and Employees' :
Retirement Plan :
            : No. 440 C.D. 2017
Appeal of: Karen Gausman : Argued: May 7, 2018


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge


<u>OPINION NOT REPORTED</u>

DISSENTING OPINION BY
JUDGE COVEY                         FILED: August 16, 2018


       I agree with the Majority's conclusions that the trial court properly refused to designate Karen Gausman (Wife) as a surviving spouse for purposes of her right to survivor benefits under Gary Gausman's (Participant) Retirement Plan (Participant's Plan) and properly determined that Wife has no property interest in the Participant's Plan's survivor benefits, and therefore the denial of those benefits does not violate due process. However, I respectfully dissent from the Majority's conclusion that the trial court properly denied Wife's equal protection claim.

           It is undisputed that the rational basis test applies in the instant case.

           If the rational basis test applies, then the classification in question must be 'reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. In other words, **a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation**.'

*William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 170 A.3d 414, 458 (Pa. 2017) (emphasis added; footnote omitted) (quoting *Commonwealth v. Albert*, 758 A.2d 1149, 1151 (Pa. 2000) (citation omitted)). Simply put, the classification must have a rational relation to the objective. Here, the City of Erie Retirement Plan maintains that the object of the legislation is saving money and the classification is former spouses versus current spouses. The City proffered no legitimate relation between the two, but rather asserted that the Plan will save money if it need not pay former spouses survivor benefits. This assertion is merely a restatement of the objective and is not a rational basis for choosing to pay one class over the other.

The Majority maintains that "[t]he United States Supreme Court has addressed the differing treatment of current spouses and former spouses in the Social Security context and held the distinction did not violate equal protection because the classification was a reasonable means to accomplish the desired end." Majority Op. at 11. Therefore, the Majority concludes, the trial court "did not err in finding the classification between current spouses and ex-spouses passes the rational basis test." Majority Op. at 13. However, a review of *Mathews v. De Castro*, 429 U.S. 181 (1976), and *Bowen v. Owens*, 476 U.S. 340 (1986), the cases the Majority relies on, reveals that the Majority's conclusion is not supported by either case.

In *Mathews*, the legislation **deferred** social security disability or retirement benefits to former spouses until they reach age 62 because "[Congress] could rationally decide that the problems created for divorced women remained **less pressing** than those faced by women who continue to live with their husbands." *Id.* at 188 (emphasis added). Thus, it was **reasonable to defer** benefits. **In the instant case**, the **benefits are** not deferred, they are **eliminated**. Clearly, less problems cannot be interpreted as no problems. Thus, the rationale that divorced women faced **less problems** than women living with their husbands, while a reasonable basis to **defer** benefits because the classification is a reasonable means to accomplish the

desired end, cannot justify an outright **elimination of benefits**.  Because under the *Mathews* rationale, divorced women still suffer problems, the **elimination** of survivor benefits for former spouses is not a reasonable means to accomplish cost savings. Accordingly, *Mathews* does not support the Majority's assertion that "the classification between current spouses and ex-spouses passes the rational basis test." Majority Op. at 13.

Similarly, in *Bowen*, the rational basis for the classification was recognizing that divorce normally reduces dependency on the wage earner.  However, **the classification was not spouses versus former spouses**, but rather, a widowed spouse who remarries after age 60 versus a former spouse who remarries after age 60. Further, former spouses, whether remarried or not, had to be married to the participant for at least 10 years to receive retirement benefits.  Because Congress incorporated other factors, such as age, length of marriage to the participant and remarriage, when distinguishing between widowed spouses and former spouses, the classification in *Bowen was not arbitrary*.[1]  Consequently, the United States Supreme Court did not hold that lesser financial need and other dependence among divorced husbands and wives as compared to couples who stay married was a rational basis for a spouse versus former spouse classification.  In the instant case, the only factor the City of Erie Retirement Plan took into consideration was cost savings which is its alleged objective.  Length of marriage to the Participant, age of current or former spouse and remarriage are irrelevant under the Participant's Plan.  Because the City of Erie Retirement Plan classification is an arbitrary means for saving money and has no rational basis for eliminating survivor benefits for former spouses, it violates the equal protection clause.  Accordingly, *Bowen* does not support the Majority's

---

[1] Notably, the classification in *Bowen* was eliminated prior to the Supreme Court's decision.

assertion that "the classification between current spouses and ex-spouses passes the rational basis test." Majority Op. at 13.

Remarkably, under Participant's Plan for a current spouse who marries a participant post-retirement to be entitled to survivor benefits, the spouse must be "married to the [p]articipant at the time of the [p]articipant's death **and for the twelve months immediately preceding the participant's death**." Article 145.02(hh) (emphasis added). Clearly, there is a rational basis for distinguishing between current spouses married under twelve months at the time of a participant's death and current spouses married over twelve months at the time of a participant's death, as the durational requirement prevents false claims by spouses who perpetrate death bed marriages. *See City of Phila. Bd. of Pensions & Ret. v. Bordley,* 481 A.2d 690 (Pa. Cmwlth. 1984) (This Court ruled a similar two-year durational requirement was rationally related to the purpose of Philadelphia's Municipal Pension Ordinance.). However, relative to former spouses under Participant's Plan, **all** former spouses are disqualified from receiving survivor benefits notwithstanding the length of marriage to participant; thus, illustrating the arbitrariness of the classification in the instant case. Expressly, under Participant's Plan, "a former spouse of a Participant shall not be treated as the spouse or surviving spouse **for any purposes** under the [Participant's P]lan." Article 145.15(f) (emphasis added). Because the **only** consideration under the Participant's Plan is the fact that the spouse is no longer married to the Participant, the classification is purely arbitrary. Consequently, there is no rational basis for such a classification.

Importantly, even Counsel for the City of Erie Retirement Plan could not produce a rational basis for the classification.[2] Indeed, when asked at oral argument

---

[2] In its brief, the City of Erie Retirement Plan refers to its argument before the trial court, wherein it asserted the rationale for the classification was "to protect the [Participant's P]lan by lowering costs by not having to pay" and "trying to protect the participants themselves, so that **if** the participant remarries, and wants their [sic] current spouse to receive their [sic] survivor's benefit

what is the rational basis for the classification, Counsel responded: "You can make one up." Oral Argument May 7, 2018. The Majority hypothesizes, as it is entitled to do under the law, that "divorcees are less likely to be financially dependent upon their ex-spouses, and in seeking to conserve costs, any disparity should fall on former spouses." Majority Op. at 13. However, the basis has to have a "fair and substantial relation" to the objective of the legislation. *William Penn Sch. Dist.,* 170 A.3d at 458 (quoting *Albert*, 758 A.2d at 1151). Here, the City of Erie Retirement Plan maintains that the objective is saving money in that the Participant's Plan saves money by only paying current spouses. Specifically, "[be]cause the survivor's benefits lasts for the widow's entire life, fifty percent of the pension benefit that's being paid to the participant[,] so only paying the benefit to current spouse protects the [Participant's P]lan." Reproduced Record at 126a. Further, since "the fairly reasonable conclusion [is] that in many cases, employees will not remarry, or remain remarried until their death[,]" the Participant's Plan saves money by not paying former spouses. Trial Ct. March 9, 2017 Op. at 9. Consequently, whether "divorcees are less likely to be financially dependent upon their ex-spouses," Majority Op. at 13, is not fairly and substantially related to the cost savings objective.

In sum, the classification **must have a rational relation to the objective**. Here, the classification is former spouses versus current spouses, and the objective is cost savings. The City proffered no legitimate relation between the two, but rather asserted that the Plan will save money if it need not pay former spouses survivor benefits. This assertion is merely a restatement of the objective and is not a rational basis for choosing to pay one class over the other. "Ultimately, [the Dissent] can conceive of no rational reason why those similarly situated with respect to

rather than the former spouse, that they [sic] feel that paying the benefit to the current spouse rather than the former spouse protects the participants of the [Participant's P]lan." Reproduced Record at 126a (emphasis added). Under the above analysis, neither of these provides a rational basis for the classification.

[receiving survivor benefits], should be treated unequally." *Curtis v. Kline*, 666 A.2d 265, 270 (Pa. 1995).

Accordingly, because the trial court erred by denying Wife's equal protection claim, determining that the City of Erie Retirement Plan's denial of survivor benefits passes the rational basis test, and thereby refusing to designate Wife as a surviving spouse for purposes of her marital share of a survivor benefit in violation of the equal protection clause, I would reverse the trial court's order.

_____
ANNE E. COVEY, Judge